[Civ. No. 15634. Second Dist., Div. Three. July 14, 1947.]

HOWARD D. CLINTON et al., Respondents, v. THOMAS J. HOGAN et al., Appellants.

Thomas B. Reed and Nichols, Cooper & Hickson for Appellants.

Paul R. Matthews for Respondents.

WOOD, J.—In this action for specific performance the defendants appeal from the judgment in favor of plaintiffs. Plaintiffs Howard D. Clinton, Geraldine A. Clinton, Clarence R. Dunham, and Theresa A. Dunham entered into a written agreement, evidenced by escrow instructions, with defendants Thomas J. Hogan and Elsie C. Hogan, whereby plaintiffs agreed to buy from defendants and defendants agreed to sell to plaintiffs certain real property, being a portion of a walnut orchard owned by defendants. The orchard is known as Lot 167 of a certain tract. The escrow instructions, made on November 17, 1944, provided as follows: That the escrow was to be closed on or before January 18, 1945; that the buyers would pay $9,000 cash in escrow and deliver a note and trust deed in escrow for the balance of the purchase price, which price was to be determined at the rate of $1,000 per acre by a survey to be made; that the sellers would deliver in escrow a deed and certain shares of water stock. (About December 21, 1944, as a result of the survey the price was found to be $17,476.) A further provision in the instructions was that: "It is understood that this escrow is contingent upon the successful completion of Escrow No. 2963, wherein the sellers are deeding a portion of Lot 167 to Brashear and Winbourne." It was also provided therein that: "An agreement covering expenses of care of pipe line and walnut crop to be delivered into escrow before close of escrow, signed by the parties hereto."

At the same time and place that defendants entered into said escrow with plaintiffs, the defendants also entered into an escrow, No. 2963, with J. B. Brashear and Tom Winbourne, relating to the sale by defendants to Brashear and Winbourne of another portion of the orchard for $2,798. That escrow also was to be closed on or before January 18, 1945. It provided that said buyers would pay $950 cash in escrow, which amount represented commission payable by defendants

to Brashear for his services as a real estate broker in the sale to plaintiffs; that said purchasers were to deliver a note and trust deed in escrow for the balance of the purchase price; that the sellers would deliver in escrow a deed and three shares of water stock. That escrow included a provision that it was contingent upon the successful completion of escrow No. 2961 between the plaintiffs and defendants. It also included a provision that an agreement covering expenses of care of pipe line would be delivered into escrow before the close of escrow, signed by the parties to the escrow.

The sellers retained about six acres of the lot. The source of water supply for the whole lot was in front of the property retained by the sellers, and the water pipe line extended across that property and onto the two portions of the lot sold to plaintiffs and to Brashear and Winbourne. There was no other water supply for the two portions sold, and the sellers and purchasers agreed that they would enter into a written agreement that the owners of the three parcels of land would share in the expenses of the upkeep of the part of the pipe line which crossed the parcel retained by the sellers, and that the proportions of such expenses to be paid by the owners of each parcel would be agreed upon later and stated in the written agreement.

The plaintiffs deposited in escrow, before January 18, 1945, the money and note and trust deed required of them by the instructions. Within a few days after the escrow instructions had been signed by the parties, the plaintiffs, with the consent of defendants, moved upon the premises which they had agreed to purchase, and they have lived there since that time, taking care of the walnut trees, selling the walnuts, and impounding the proceeds of the sales subject to the final determination of this case.

Brashear and Winbourne deposited in escrow, before January 18, 1945, the cash required of them, but did not deposit before that date the note and trust deed. On January 19, 1945, the defendant Thomas J. Hogan, by his attorney Thomas B. Reed, notified the escrow holder in writing that "the completion of each escrow being contingent on the other, and Brashear and Winbourne having failed to place in escrow the papers and money required of them to complete the escrow, and the time for completion thereof having expired," he cancelled both escrows.

Brashear and Winbourne commenced an action for specific performance against these same defendants. These two

actions were tried at the same time. At the trial it was not contended that plaintiffs had failed in any respect to comply with their escrow instructions, but it was asserted as to them that the "only thing that had not been completed" in their escrow was "that there never was a completion of the Brashear-Winbourne escrow," upon which the plaintiffs' escrow was contingent. As to Brashear and Winbourne it was contended at the trial that they failed to deposit the note and trust deed within the time required. The note and trust deed were taken to the escrow holder (Covina National Bank) sometime after January 25, 1945, and before January 29, 1945, but the escrow holder refused to accept them. After such refusal Brashear sent the note and trust deed to the escrow by registered mail, and they were received by the escrow holder on January 29, 1945, and retained by it. The agreement regarding the pipe line, which agreement was to be signed by all the parties to both transactions and was to be delivered into escrow *before the close of escrow,* was never prepared, and of course was not delivered into escrow. Brashear and Winbourne asserted at the trial, as justification for *not having* delivered the note and trust deed in escrow before January 18, 1945, that since the said agreement was to be prepared by the attorney for defendants Hogan (according to letters from the escrow holder and to statements made by Mr. Hogan), and was to be signed by all the parties and delivered in escrow before the close of escrow, and since the agreement had not been prepared before January 18, 1945, Brashear and Winbourne had a right to assume that the escrow would not be closed on that day and would not be closed before the agreement was so prepared and was signed by all the parties to both escrows and delivered into escrow.

On December 26, 1944, the escrow holder wrote a letter to Mr. Hogan, enclosing the deeds to be signed by him, and stated therein, among other things, "The agreements covering expenses of care of pipe line should also be handed into escrow." On December 28, 1944, the escrow holder wrote a letter to Mr. Brashear stating, "Mr. Hogan is having the agreement for the pipe line, etc., drawn by his Attorney and it will come to you for signatures before close of escrow." On the same date the escrow holder wrote a letter to these plaintiffs stating, "We understand that Mr. Hogan is having his Attorney draw the agreement regarding pipe line, etc., which will come to you for signature before close of escrow."

Mr. Brashear testified that the agreement about the water was important to him because he wouldn't have any water

on his land without it; that after the escrow instructions were made he asked Mr. Hogan about the pipe line agreement, and Mr. Hogan told him that Mr. Reed, his attorney, was going to draw the pipe line agreement; that when they talked about the agreement at a later time Mr. Hogan said that his attorney had been busy, but he was going to draw it, and that he (Brashear) "didn't need to worry about it"; that soon after January 11, 1945, he received a letter from Mr. Reed stating that the "return by you of papers in the Hogan escrow" to the bank "is endangering completion of the escrow"; that soon after receiving that letter he told Mr. Hogan about it and also told him that he had received a letter from the bank stating that the pipe line agreement would be sent to him for signature before the closing of the escrow; that Mr. Hogan said, in reply thereto, that "he was going to contact Mr. Reed and see that it [the agreement] was taken care of."

Mr. Clinton, one of the plaintiffs, testified that in the first part of December, 1944, Mr. Hogan told him and Mr. Dunham that "he would give Mr. Reed the fundamentals of this agreement [pipe line agreement] so that he could draw it up, and we could sign it before the escrow." It was stipulated that Mr. Dunham would testify substantially the same as Mr. Clinton had testified. In addition thereto, Mr. Dunham testified that on another occasion, when he and Mr. Hogan observed leaks in the pipe line, Mr. Hogan told him, in effect, "that he was going to have Mr. Reed draw up an agreement whereby that pipe line would have to be taken care of by all parties."

The attorney for Brashear and Winbourne, Mr. Miles, testified that in a conversation with Mr. Reed in the latter part of January, 1945, Mr. Reed said that Mr. Hogan had called at his office with respect to having him prepare the pipe line contract, but he (the attorney) had been very busy and had forgotten about it at the time he sent the notice of cancellation.

Mr. Reed testified that he was attorney for defendants Hogan and also for the bank, the escrow holder; that prior to entering into the escrows all the parties were in his office and the transaction was discussed, including the pipe line agreement and the location of the pipe line, but he did not recall anything being said about who was to draw it.

Mr. Hogan testified that about two weeks after the escrow instructions were signed he gave in a general way to Mr. Reed the necessary information for the preparation of a pipe line agreement, and explained to him where the line was, across what property it extended, and what was necessary with reference to an agreement for maintenance of the line; that he did not authorize him to prepare the agreement; that neither Mr. Clinton nor Mr. Dunham asked him about the agreement; that he did not remember whether he told them that his attorney said it would take time to get the agreement out; that he spoke to Mr. Winbourne and Mrs. Clinton "about the agreement being drawn up at everybody's expense"; that he did not remember any conversation with Mr. Brashear to the effect that he (Mr. Hogan) said his attorney would prepare the agreement; that he did not remember receiving the letter of December 26th, from the escrow stating that the pipe line agreement should be handed into escrow. He testified further: "Q. You asked him [Mr. Reed] at that time, did you not, to prepare such an agreement? A. No; I just talked about it. I said we would all have to get together. Q. Did you ever make any effort to get together with any of these people? A. I didn't make much of an effort, because I thought Mr. Dunham out on the front of the grove told me we wouldn't have to have a pipe line agreement drawn up."

Defendants contend on appeal that since Brashear and Winbourne did not deposit the note and trust deed in escrow before January 18, 1945, defendants had a right to cancel the escrow with plaintiffs. They do not assert that plaintiffs failed to do anything required of them, but assert as to plaintiffs that their escrow failed only because Brashear and Winbourne failed to deposit the note and trust deed within the time limit of their escrow. Defendants do not contend that plaintiffs or Brashear and Winbourne should have prepared the pipe line agreement. The evidence was sufficient to support a finding that defendants Hogan stated to plaintiffs and Brashear and Winbourne that defendants would have the pipe line agreement prepared for the signatures of the parties, and that defendants caused plaintiffs and Brashear and Winbourne to rely upon said statement and to believe that it would not be necessary for Brashear and Winbourne to deposit the note and trust deed in escrow until the pipe line agreement was signed by the parties, and to believe that the escrows would not be closed or cancelled before the agreement was deposited in escrow. The findings herein are not as specific as they should be, and are findings

only by reference to paragraphs of the complaint and answer with a statement as to whether the allegations in the paragraphs are true or untrue. The trial court found that Brashear and Winbourne deposited all documents required of them by the escrow instructions to be deposited in escrow within the 60 days specified in the escrow instructions, and that plaintiffs and Brashear and Winbourne did all things required of them to be done on or before January 17, 1945, and neither escrow was closed or completed solely and entirely by reason of the fault, failure and deliberate refusal by the defendants to deposit the grant deeds and deliver the water agreements required of them. Defendants assert that this finding is not supported by the evidence, since it was admitted that the note and trust deed were not delivered in escrow until January 29, 1945. It is to be noted that the above-mentioned finding does not state that Brashear and Winbourne deposited the note and trust deed in escrow on or before January 17, 1945, but states that they deposited all documents required of them within the 60 days, and did all things required of them on or before January 17, 1945. Since it was admitted that the note and trust deed were not deposited in escrow until after January 18, 1945, and since the finding states that the escrows were not completed solely by reason of the fault of defendants, it is implied in said finding that the note and trust deed were not required, by reason of the circumstances herein, to be filed before January 18, 1945. Since the principal point in the trial was whether Mr. Hogan made the alleged statements to the effect that he would have the agreement prepared and that Mr. Brashear should not worry about it, it is implied in said finding that Mr. Hogan made such statements and that the circumstances herein which excused the filing of the note and trust deed before January 18th, were statements and conduct of Mr. Hogan which led the buyers into a position of false security regarding an extension of time for closing the escrow. The evidence is sufficient to support that finding, and the findings are sufficient to support the judgment.

Since the two actions were consolidated "for trial," no doubt pursuant to section 1048, Code of Civil Procedure, there should have been but one set of findings and one judgment, and although separate findings and judgments were made the same operate in favor of the several plaintiffs in the same manner as if plaintiffs had brought a single action (*Union Lumber Co.* v. *Simon*, 150 Cal. 751, 762 [89 P. 1077,

1081]; *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 229, 232 [29 P. 622]; *Coghlan* v. *Quartararo*, 15 Cal. App. 662, 667 [115 P. 664]). The two sets of findings and judgments will be considered as one document. (*Bechtold* v. *Bishop & Co., Inc.*, 16 Cal.2d 285, 287 [105 P.2d 984].) We have heretofore ordered brought up for consideration upon the appeal the findings and judgment in *Brashear and Winbourne* v. *Hogan.*

The court made express findings, entitled in that case, covering the matters implied in the findings herein and rendered judgment in favor of the plaintiffs. The court found expressly that Brashear and Winbourne complied fully with the terms of their escrow instructions; that defendants Hogan promised and agreed to prepare the pipe line agreement and to submit it to those plaintiffs, and it was their duty to so prepare and submit it; that those plaintiffs, Brashear and Winbourne, had a right to rely upon defendants' promise to prepare and submit said agreement; that defendants having failed to prepare said agreement and submit it to those plaintiffs, said escrow was not subject to cancellation on January 18, 1945; that the attempt by defendants to terminate said escrow on January 19, 1945, was therefore premature and of no effect; that the failure to deliver the note and trust deed before January 18, 1945, was not due to any fault of those plaintiffs, but was due to the failure of defendants to prepare the said agreement. Plaintiffs herein may rely upon the findings and judgment in favor of Brashear and Winbourne to overcome the defense that Hogan properly cancelled their escrow upon the ground that the Brashear and Winbourne escrow was not closed within the time agreed upon.

As to the matter of requiring specific performance of the agreement to prepare and execute the pipe line agreement, it was stated by the parties at the trial that if plaintiffs were entitled to judgment for specific performance as to the contract of sale of the land it was quite probable that the parties could arrive at an equitable agreement as to the pipe line. It was thereupon stipulated orally that the parties waived any right which they might have to insist upon specific performance with respect to the preparation of an agreement for the care and maintenance of the pipe line.

The judgment is affirmed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.