[No. B080165. Second Dist., Div. Four. May 26, 1994.]

METRO-GOLDWYN-MAYER, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TRACINDA CORPORATION et al., Real Parties in Interest.

## COUNSEL

White & Case, C. Randolph Fishburn, Gary L. Urwin and Jill H. Silfen for Petitioner.

No appearance for Respondent.

Christensen, White, Miller, Fink & Jacobs, Patricia L. Glaser, James S. Schreier and Isaac H. Winer for Real Parties in Interest.

**OPINION**

**WOODS (A. M.), P. J.**—The issue presented in this case is whether an attorney's duty to release all "client papers and property" to a former client upon request (rule 3-700, Rules Prof. Conduct, hereafter rule 3-700)[1] requires disclosure of the attorney's "absolute" work product. (Code Civ. Proc., 2018, subd. (c).)[2] We conclude, on the facts presented, that petitioner's former counsel has waived any right it might otherwise have to protect its absolute work product from disclosure to petitioners.

I

The former client in this case is petitioner Metro-Goldwyn-Mayer, Inc. (hereafter MGM). The attorney is Christensen, White, Miller, Fink & Jacobs (hereafter Christensen). Christensen represented MGM (then known as MGM/UA) and its majority shareholders in a merger transaction which took place on November 1, 1990. MGM is now suing those majority shareholders and others, alleging that they engineered the merger by means of fraud and

---

[1]Rule 3-700(D) provides, in pertinent part, that an attorney "whose employment has terminated shall: [¶] (1) Subject to any protective order or non-disclosure agreement, promptly release to the client, at the request of the client, all the client papers and property. 'Client papers and property' includes correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not[.]"

[2]Code of Civil Procedure section 2018 provides: "(a) It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts. [¶] (b) Subject to subdivision (c), the work product of an attorney is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in injustice. [¶] (c) Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances. [¶] (d) This section is intended to be a restatement of existing law relating to protection of work product. It is not intended to expand or reduce the extent to which work product is discoverable under existing law in any action. [¶] (e) The State Bar may discover the work product of an attorney against whom disciplinary charges are pending when it is relevant to issues of breach of duty by the lawyer, subject to applicable client approval and to a protective order, where requested and for good cause, to ensure the confidentiality of work product except for its use by the State Bar in disciplinary investigations and its consideration under seal in State Bar Court proceedings. For purposes of this section, whenever a claim has initiated a complaint against an attorney, the requisite client approval shall be deemed to have been granted. [¶] (f) In an action between an attorney and his or her client or former client, no work product privilege under this section exists if the work product is relevant to an issue of breach by the attorney of a duty to the attorney's client arising out of the attorney-client relationship. [¶] For purposes of this section, 'client' means a client as defined in Section 951 of the Evidence Code."

deception for their own financial benefit, leaving MGM financially unable to operate. Petitioner MGM is represented by White & Case (hereafter Case).[3] Real parties in interest are represented by Hufstedler, Kaus & Ettinger. Those parties include MGM/UA's majority shareholders Tracinda Corporation and Kirk Kerkorian, Chief Executive Officer and Chairman of the Board of Directors Jeffrey Barbakow and board of directors member Stephen Silbert (hereafter, collectively Tracinda defendants).

In a separate but related action arising from the same nucleus of facts, Case represents the bank which funded the merger, Credit Lyonnais Bank Nederland N.V. (hereafter CLBN). The complaint in that action alleges that CLBN was compelled to pump hundreds of millions of dollars into the new entity to keep it alive due to the fraud and deception of the Tracinda defendants.[4] Christensen represents the Tracinda defendants in CLBN's action.

MGM filed a motion in the instant action for an order directing Christensen to provide it with access to all files pertaining to the merger and all files pertaining to a subsequent involuntary bankruptcy proceeding in which Christensen represented MGM. The true focus of the motion was not so broad, however. Declarations in support of the motion revealed that Christensen had allowed Case to review at least 15 boxes of documents (Christensen declared it was 30) which did not include attorney notes, writings relating to factual or legal research, internal memoranda, documents relating to meetings with MGM personnel or persons outside of the company, notes of telephone conversations and documents relating to preparation of minutes of meetings of the Board of Directors. Petitioner contended that Christensen's refusal to produce these items (on the ground they were either absolutely privileged work product or qualified work product) was unethical and prejudiced MGM because the documents contained "essential information pertaining to the merger which is the central issue in this litigation."

Hufstedler, Kaus and Ettinger filed no opposition to the motion on behalf of the Tracinda defendants. Instead, Christensen filed opposition under the caption of the CLBN case, asserting that it had no dispute with *MGM*, but

---

[3]Since both of the law firms in question have a partner named White, we shall delete that name from our references to the two firms for the sake of clarity.

[4]The defendants in that action have cross-complained, alleging that the Credit Lyonnais family of financial institutions engaged in fraudulent schemes "to conceal improper and unlawful banking practices from regulators and to defraud the creditors, shareholders, and affiliates of their client borrowers," and engineered the merger of MGM/UA and Pathe Communications "in order to protect its huge, precarious loan obligations to Pathe and affiliates of Giancarlo Parretti, the Italian financier and long-time client of Credit Lyonnais."

opposed *Case's* efforts "to obtain the Firm's work product for use by CLBN against the Tracinda Parties in the CLBN Action."

Pursuant to stipulation of the parties, the trial court appointed a retired judge to act as discovery referee in this case and in the separate case brought by CLBN.

After reviewing 188 unorganized documents which filled two carton boxes, the referee concluded that a number of the documents were not work product, some had minimal work product aspects, some were unintelligible, and 86 unequivocally included counsel's thoughts and impressions. The referee recommended that all of the documents, except the 86 which were protected by the absolute work-product privilege, be disclosed to petitioner.

Petitioner objected to the referee's report arguing, inter alia, that Christensen had previously assured the court, when it opposed a recusal motion in CLBN's action, that it possessed no information regarding the merger which could be deemed confidential, and had conceded that " 'Any purported "confidential" information possessed by the firm . . . cannot be shielded from disclosure in this case no matter who represents defendants.' " (Italics omitted.)

After hearing, the trial court took the matter under submission. Later that day the trial court issued a minute order indicating that petitioner's motion was denied and that a written order had been signed and filed. We have not been provided with a copy of that written order, and the minute order is somewhat ambiguous. It appears, however, that the trial court overruled petitioner's objections to the referee's report and followed the recommendations of the referee, resulting in the disclosure of 102 documents and the nondisclosure of the 86 documents.

MGM petitioned this court for relief, requesting that immediate access to all of the documents be allowed. Christensen responded on behalf of real parties in interest, the Tracinda defendants. On December 7, 1993, this court issued an order to show cause why a peremptory writ of mandate should not issue ordering the superior court to vacate its order denying petitioner's motion.

II

The parties having focused their briefing on the issue of whether a conflict exists between rule 3-700 and Code of Civil Procedure section 2018, we

have reviewed case law interpreting each. Our research has revealed the existence of two lines of seemingly conflicting authority. One, involving application of the rule of professional conduct in actions where a former attorney refused to turn files over to new counsel (often for the purpose of coercing payment for the work product), holds that the work product belonged to the client. (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297]; *Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 950 [203 Cal.Rptr. 879]; *John F. Matull & Associates, Inc.* v. *Cloutier* (1987) 194 Cal.App.3d 1049, 1056 [240 Cal.Rptr. 211].) The other line of authority, decided under the statutory work-product rule, holds that the attorney is the exclusive holder of the privilege for purposes of adversarial discovery conducted in the course of litigation. (*Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405, 411 [72 Cal.Rptr. 74]; *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 594 [113 Cal.Rptr. 561]; *Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90, 101 [146 Cal.Rptr. 171]; *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 64-65 [166 Cal.Rptr. 274]; *Rumac, Inc.* v. *Bottomley* (1983) 143 Cal.App.3d 810, 815-816 [192 Cal.Rptr. 104].)

In 1985, this court aligned itself with the latter line of authority in *Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 267 [218 Cal.Rptr. 205], where the issue was whether absolute work product generated in the process of assisting a client to act as a trustee but never communicated to the client, was protected from discovery by trust beneficiaries who sought to remove the trustee for mismanagement. We held the attorney was the holder of the statutory work-product privilege and that absolute work product was not required to be disclosed even to the client. (*Id.* at pp. 271, 278.) We emphasized the narrowness of our holding and pointed out that we were not called upon to "consider the far stronger public policy considerations involved in discovery where the client seeks his former attorney's work product to prepare his own case against that attorney." (*Id.* at p. 279.)

Thereafter, in 1988, the State Bar Board of Governors adopted, and the Supreme Court of California approved, new Rules of Professional Conduct[5] which included rule 3-700. The State Bar explained, when it formally requested the California Supreme Court to approve the amendment, that subdivision (D) was an expanded version of its predecessor and was intended to "clarify the troubling issue of what constitutes 'client papers and property.'" (Legis. Hist. Docs., Dock. No. 8, "Request that the Supreme Court of

---

[5]Former Rules of Professional Conduct which had been approved in 1974 were superseded by the new rules, effective May 27, 1989. (See West's Ann. Rules Prof. Conduct (1993 supp. pamp.) p. 611.)

California approve amendments to the Rules of Professional Conduct of the State Bar of California, and Memorandum of Supporting Documents in Explanation" (Dec. 1987) p. 40.)

This state of the law has caused one federal court to observe that California has two conflicting absolutes, the absolute right of a client to his attorney's work product, and the absolute right of an attorney to protect his or her impressions, conclusions, opinions, and legal research or theories from disclosure. (See *Roberts* v. *Heim* (N.D.Cal. 1988) 123 F.R.D. 614, 634.) Legal ethics committees agreed, noting that an attorney presented with a discovery demand or informal request by a former client for the attorney's absolute work product faced a dilemma. (See Cal. Compendium on Prof. Responsibility, pt. IIB, S.F. County Bar Assn. Legal Ethics Com., Opn. No. 1990-1, p. 1.)[6]

In 1990, the Legislature added subdivision (f) to Code of Civil Procedure section 2018[7] thereby responding to the concerns this court expressed in *Lasky*.

■ Petitioner urges this court to take up the issue where *Lasky* left off, arguing that the work-product privilege is no longer "absolute." Respondent counters, inter alia, that no case has ever applied rule 3-700 to a case such as this because the rule applies only where counsel's services have terminated in the midst of representation. Both of these arguments overstate the case. The language of Code of Civil Procedure section 2018 makes clear the legislative intent to protect absolute work product from disclosure except in rare circumstances. As to respondent's assertion, this case demonstrates graphically that rule 3-700 may come into play after representation on a particular matter is complete.

We need not resolve the dispute presented with reference to either the statutory work product or the professional rule of conduct, however, because

---

[6]Various ethics committees have reached differing conclusions about what an attorney faced with this dilemma should do. The San Francisco committee concluded an attorney could not ethically withhold client papers and property, including the attorney's uncommunicated work product in a litigation or nonlitigation context where such information and materials were reasonably necessary to the client's representation. (Opn. No. 1990-1, *supra*, at p. 4.) The San Diego committee concluded disclosure of the attorney's absolute work product was not obligatory, but recommended it as a matter of professional ethics and courtesy. (Cal. Compendium on Prof. Responsibility, pt. IIC, San Diego County Bar Assn. Legal Ethics Com., Ethics Opn. No. 1984-3, p. 2.)

[7]Subdivision (f) of Code of Civil Procedure section 2018 provides: "In an action between an attorney and his or her client or former client, no work product privilege under this section exists if the work product is relevant to an issue of breach by the attorney of a duty to the attorney's client arising out of the attorney-client relationship."

there is a narrower ground available upon which to base our decision.[8] The simple fact is that one of the parties affected by the merger which is the subject of this action is being denied the 86 documents which reflect Christensen's impressions, conclusions, opinions, legal research and theories concerning that merger while the other parties to the transaction enjoy access to this information. Equity demands that either both parties should have the information or neither should. (See *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 622 [120 Cal.Rptr. 253] [an attorney's "duty to act without bias or prejudice does not dissolve merely because the attorney has been discharged."].) Therefore, the facts of this case present an appropriate context in which to apply the doctrine of waiver. (See *Merritt* v. *Superior Court* (1970) 9 Cal.App.3d 721, 731 [88 Cal.Rptr. 337].)[9]

The effect of Christensen's representation of the Tracinda defendants is that it has placed itself in opposition to its former client's position with respect to the transaction (i.e., the merger) handled by Christensen. Whether or not that is a sufficient basis for recusal (an issue raised in a separate, pending appeal) it is not conscionable to allow Christensen to use its work product developed in the underlying transaction for the benefit of some of its clients and against another. Having chosen sides in this litigation, Christensen cannot be heard to demand application of its own privilege to keep relevant documents from its former client, MGM. For this reason, we hold that Christensen is deemed to have waived any right to protect its absolute work product created during the merger from MGM.

---

[8]We note that Code of Civil Procedure section 2018 and rule 3-700 are in most respects compatible with each other. Section 2018 provides two levels of protection for work product. The lesser level of protection allows discovery of qualified work product when a court determines that denial will unfairly prejudice the party seeking discovery in preparing that party's case or will result in an injustice. The greater level of protection applies to an attorney's impressions, conclusions, opinions, or legal research or theories, which are declared "not [to] be discoverable under any circumstances." (Code Civ. Proc., 2018, subd. (c).)

Rule 3-700 requires an attorney to release to the client "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation[.]" Each of the specified items is entitled to qualified protection under the work-product rule, but not absolute protection. (See *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7, 11 [66 Cal.Rptr. 280]; *Fellows* v. *Superior Court*, *supra*, 108 Cal.App.3d at p. 68.)

Therefore, the only portion of rule 3-700 which has the potential to create a conflict with section 2018 is the phrase "other items reasonably necessary to the client's representation[.]" If the phrase is interpreted to mean other documents of the same class as those enumerated, no conflict exits. If, however, the phrase is interpreted to include an attorney's impressions, conclusions, opinions, legal research or theories, the conflict exists. We need not, and therefore do not, resolve this issue.

[9]Prior to oral argument of this matter, we requested the parties to be prepared to address the issue of whether Christensen waived any right it might otherwise have to shield its absolute work product from MGM by virtue of its representation of Tracinda in the related action brought against Tracinda by CLBN. The parties responded to our request at oral argument.

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying MGM's request for disclosure of the 86 documents identified by the referee as absolute work product and to enter a new and different order directing Christensen to disclose the documents to MGM.

Epstein, J., and Hastings, J., concurred.