[Nos. B084939, B077817. Second Dist., Div. Four. July 25, 1995.]

METRO-GOLDWYN-MAYER, INC., et al., Plaintiffs and Appellants, v. TRACINDA CORPORATION et al., Defendants and Respondents.

### COUNSEL

White & Case, C. Randolph Fishburn, Gary L. Urwin and Susan J. DeWitt for Plaintiffs and Appellants.

Christensen, White, Miller, Fink & Jacobs, James S. Schreier, Isaac H. Winer, Michael R. Hambly and Patricia L. Glaser for Defendants and Respondents.

### OPINION

HASTINGS, J.—In these two related appeals, appellants Metro-Goldwyn-Mayer, Inc. and Credit Lyonnais Bank Nederland N.V. (CLBN) seek to overturn the trial court's denial of two motions to disqualify counsel for defendants, Christensen White, Miller Fink & Jacobs (hereafter referred to as Christensen White or the Christensen firm).

We reverse the judgment in case No. B084939. The appeal in case No. B077817 is thereby rendered moot and accordingly is dismissed.

#### FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying these appeals are basically undisputed.[1]

MGM/UA Communications Co. (MGM/UA) was a motion picture production company with its principal executive offices located in Culver City.

---

[1]These facts were also set forth in our recently published decision on another issue in this case, *Metro-Goldwyn-Mayer, Inc.* v. *Superior Court* (1994) 25 Cal.App.4th 242 [30 Cal.Rptr.2d 371].

Since 1969, MGM/UA's primary outside counsel in both litigation and transactional matters was Christensen White (and its predecessor firms). Respondents Kerkorian, Barbakow and Silbert were shareholders and members of MGM/UA's board of directors. Respondent Tracinda Corporation, together with Kerkorian, owned approximately 70 percent of its shares. Christensen White also represented Kerkorian and Tracinda.

Respondent Silbert was a partner of the Christensen firm. One of his partners, Terry Christensen, was also on the MGM/UA Board of Directors, and was at one time president of Tracinda Corporation.

On November 1, 1990, MGM/UA merged with a subsidiary of Pathe Communications Co. (Pathe) and changed its name to MGM-Pathe Communications Co. (MGM-Pathe). Christensen White represented MGM in the merger and Silbert and Barbakow were the primary negotiators. Other attorneys at Christensen White actively participated in board meetings concerning the merger.[2] Funding for the merger (nearly $1 billion) was provided by CLBN. Following the merger, MGM-Pathe changed its name to Metro-Goldwyn-Mayer, Inc. (MGM).

In connection with the merger, Kerkorian, Tracinda, Barbakow and Silbert (sometimes collectively referred to as respondents) sold their MGM stock to Pathe for millions of dollars (Kerkorian and Tracinda received $1 billion; Barbakow $33 million and Silbert $6 million.) Shortly thereafter, MGM was forced into a bankruptcy proceeding, which was subsequently dismissed after CLBN pledged additional funds for MGM's operations. Christensen White also represented MGM in the bankruptcy proceedings.

MGM then engaged the law firm of White & Case (hereafter referred to as the Case firm) and filed a lawsuit against respondents Tracinda, Kerkorian, Barbakow and Silbert, in December 1992 for (1) breach of fiduciary duty; (2) declaratory relief; (3) conspiracy to defraud; (4) fraud; and (5) negligent misrepresentation (the MGM action).[3] The complaint alleged that respondents made false representations about the financial condition of MGM/UA and the effect of the merger on the financial condition to the other directors, and that they engineered the merger by means of fraud and deception for their own financial benefit, leaving MGM financially unable to operate.

---

[2] The extent of this participation is dramatically illustrated by the $700,000 in attorney fees paid by MGM to the Christensen firm in connection with the merger. Approximately $4 million was paid for other legal services rendered during 1989-1990.

[3] Also named as a defendant was Houlihan, Lokey, Howard & Zukin, Inc., (Houlihan Lokey) the firm that issued a solvency opinion in connection with the merger. The complaint, as amended, alleged causes of action against Houlihan Lokey for aiding and abetting breach of fiduciary duty, negligent misrepresentation, breach of contract, negligence, conspiracy to defraud and fraud. Apparently Houlihan Lokey has entered into settlements with MGM and CLBN and is not a party to this appeal.

Tracinda, Kerkorian, Barbakow and Silbert hired the firm of Hufstedler, Kaus & Ettinger (Hufstedler) to represent them in the MGM action.

Shortly thereafter, CLBN, also represented by the Case firm, filed a lawsuit against Tracinda, Kerkorian, Barbakow and Silbert and others (Houlihan Lokey and Giancarlo Paretti, the controlling shareholder of Pathe). This lawsuit (the CLBN action) contained causes of action for (1) conspiracy to defraud, (2) fraud, (3) aiding and abetting fraud, (4) negligence and (5) negligent misrepresentation. Essentially, the lawsuit alleged that Kerkorian, Silbert, Barbakow and Tracinda made false representations to induce CLBN to lend them the funds necessary for the merger and then depleted the surviving corporation of funds. CLBN was then forced to lend additional amounts to keep the surviving corporation, MGM, alive after the merger.

In the CLBN action, Kerkorian, Silbert, Barbakow and Tracinda hired Christensen White to represent them.

During the course of litigation, several events occurred which prompted the Case firm to file three successive motions to disqualify Christensen White as counsel to respondents in the CLBN action. The first motion to disqualify was filed in January 1993, after CLBN filed a notice that the two actions were related. That motion was denied. Then, in the CLBN action, Houlihan Lokey filed a cross-complaint against MGM and others, prompting a second motion to disqualify (the second motion).[4] CLBN and MGM appealed the denial of this motion (case No. B077817, hereinafter referred to as the first appeal). While the matter was pending on appeal, the two lawsuits were consolidated for purposes of trial and CLBN and MGM brought a third motion to disqualify, which was also denied.[5] CLBN and MGM appealed that denial (case No. B084939, hereinafter referred to as the second appeal), and the two appeals were then consolidated.

Due to the subsequent change in events, the consolidated appeals only involve the propriety of the trial court's ruling on the third motion to disqualify, the issue presented in the second appeal.

## DISCUSSION

### 1. *Standard on review*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court, '[t]o control in furtherance of justice, the

---

[4]The cross-complaint was subsequently dismissed.

[5]The actions had previously been deemed related and consolidated for pretrial purposes. The order consolidating for purposes of trial was apparently brought on the court's own motion at a status conference on March 18, 1994.

conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every manner pertaining thereto.' (Code Civ. Proc., § 128, subd. (a)(5); [citations].)" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732].)

■ Denial of a motion to disqualify counsel is an appealable order (*Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215-217 [288 P.2d 267]; *Truck Ins. Exchange* v. *Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1052 [8 Cal.Rptr.2d 228]) with abuse of discretion as the standard. (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561 [20 Cal.Rptr.2d 132]; *In re Lee G.* (1991) 1 Cal.App.4th 17, 26 [1 Cal.Rptr.2d 375].) The trial court's exercise of discretion is limited by applicable legal principles and is subject to reversal when there is no reasonable basis for the action taken. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 585; *In re Marriage of Zimmerman, supra,* 16 Cal.App.4th at p. 562.) "[T]he importance of disqualification motions requires careful review of the trial court's exercise of discretion. (*River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297, 1302 [234 Cal.Rptr. 33].)" (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 585.)

■ The issue of disqualification "ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. *The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.* The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process." (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 586, quoting *Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562], italics added.)

Here, at the hearing on the third motion to dismiss, as well as in each of the previous motions, the trial court denied the motion without comment or specific findings.

2. *The duty of loyalty*

■ ■ The applicable standards of professional responsibility are found in the Rules of Professional Conduct of the State Bar of California. Effective May 27, 1989, former rules 5-102 and 4-101 were superseded and replaced by rule 3-310, which provides in pertinent part: "(C) A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation

of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter. [¶] . . . [¶] (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Different standards have evolved for conflicts arising out of *simultaneous* representation of clients with potentially adverse interests and for conflicts arising out of *successive* representation of clients with adverse interests. Where the representation is successive—that is when an attorney is engaged to represent the interests of a party that are adverse to a former client of the attorney's—"courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*." (*Flatt* v. *Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950], italics in original.) The test used for disqualification in those instances is whether there is a "substantial relationship" between the subjects of the former and current representations. (*Id.* at p. 283.) However, when the potentially conflicting parties are simultaneously represented by the same attorney, "[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than *confidentiality*." (*Id.* at p. 284, italics added.) Thus, two duties are recognized, the duty of confidentiality and the duty of loyalty. We are dealing with both duties in the situation presented here.

As to the duty of confidentiality, it is clear that a substantial relationship exists between the subjects of the former and current representations, the merger and the negotiations relating to it. Respondents point out that the parties have waived the attorney-client privilege so that confidentiality is no longer an issue.[6] This may be so, but it is not an answer to the other duty, the duty of loyalty.

In addition to the Rules of Professional Conduct, the duty of loyalty has been recognized in the common law: "The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.'

---

[6]This was not the situation with the work-product privilege asserted by Christensen White in this action. (See *Metro-Goldwyn-Mayer, Inc.* v. *Superior Court*, *supra*, 25 Cal.App.4th 242.)

[Citations.]" (*Stanley* v. *Richmond* (1995) 35 Cal.App.4th 1070, 1086-1087 [41 Cal.Rptr.2d 768].)[7]

Where the duty of loyalty applies, it requires a *per se*, or automatic disqualification, in all but a few instances. (*Flatt* v. *Superior Court, supra*, 9 Cal.4th at p. 284.) "The reason for [the *per se*] rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to this one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. All legal technicalities aside, few if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances. As one commentator on modern legal ethics has put it: 'Something seems radically out of place if a lawyer sues one of the lawyer's own present clients in behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's *sense of loyalty* is askew.' [Citation.] It is for that reason, and not out of concerns rooted in the obligation of client confidentiality, that courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated."[8] (*Flatt* v. *Superior Court, supra*, 9 Cal.4th at p. 285, fn. omitted.)

*Flatt* addressed simultaneous representation of two clients in unrelated matters. Here, while the merger and resulting litigation are clearly not unrelated, there appears to be some question as to whether Christensen White is simultaneously representing adverse interests.

---

[7]The American Bar Association's Model Rules of Professional Conduct (1992) provide that: "(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: [¶] (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and [¶] (2) *each client consents after consultation* . . ." (rule 1.7, italics added) and "(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matters in which that person's interests are materially adverse to the interests of the former client *unless the former client consents after consultation* . . ." (rule 1.9, italics added). Respondent argues that these rules were not adopted in California when the Rules of Professional Conduct were passed. While this may be true, these rules were noted and quoted with approval in *Flatt* v. *Superior Court, supra*, 9 Cal.4th at page 282, footnote 2.

[8]The *Flatt* opinion notes in a footnote that there are exceptions to this rule, for example when corporate clients whose interests are adverse *"as to unrelated matters"* if full disclosure is made and both agree in writing to waive the conflict. (*Flatt* v. *Superior Court, supra*, 9 Cal.4th at p. 285, fn. 4, italics added.) We discuss the disclosure and waiver issues in section 3, *post.*

MGM alleged in its motion to disqualify that Christensen White still represents MGM in active litigation. Respondents claim that there is only one matter in which Christensen White is still counsel of record, and that is "a long-dormant class action brought by certain shareholders of MGM prior to the 1990 Merger." Respondents assert, without any support in the record, "[t]hat action has not been prosecuted for years and will no doubt be dismissed without further action." Christensen White does not dispute, however, that it still represents MGM in that matter. Even assuming that Christensen White was inclined to withdraw from representation in any "long dormant" matters, as the Supreme Court noted in *Flatt*: "So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it." (*Flatt* v. *Superior Court*, *supra*, 9 Cal.4th at p. 288.) What *Flatt* referred to as the "hot potato rule" (*id.* at p. 288) has been articulated as "a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before [the] hearing [on a motion for disqualification]. [Citations.]" (*Truck Ins. Exchange* v. *Fireman's Fund Ins. Co.*, *supra*, 6 Cal.App.4th at p. 1057.)

Notwithstanding representation in the "long dormant" matter, there is another compelling reason why the duty of loyalty is breached in this situation. Christensen White was indisputably MGM's chief corporate counsel for a number of years. These lawsuits are an outgrowth of what is arguably the most significant corporate transaction MGM has been involved in to date, the merger. Various members of Christensen White were intimately involved in the merger transaction.

Corporate counsel is subject to rule 3-600 of the Rules of Professional Conduct, which addresses representation of an "organization." That rule provides in pertinent part: "(E) A member representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, *the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members.*" (Italics added.)[9]

The discussion following the rule contains these comments: "Rule 3-600 is not intended to create or to validate artificial distinctions between entities and their officers, employees, or members, nor is it the purpose of the rule to

---

[9]There is no reference in the record to any written document purporting to be a waiver. We must assume that no express written waiver and consent form was ever signed by MGM. (Cf. *Zador Corp.* v. *Kwan* (1995) 31 Cal.App.4th 1285 [37 Cal.Rptr.2d 754].)

deny the existence or importance of such formal distinctions. In dealing with a close corporation or small association, members commonly perform professional engagements for both the organization and its major constituents. When a change in control occurs or is threatened, members are faced with complex decisions involving personal and institutional relationships and loyalties and have frequently had difficulty in perceiving their correct duty. [Citations.] In resolving such multiple relationships, members must rely on case law." (23 West's Ann. Civ. and Crim. Rules, pt. 2 (1995 supp.) p. 715.)

Case law provides the following guidelines: "[A]s attorneys for [a] corporation, counsel's first duty is to [the corporation]." (*Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284, 293 [301 P.2d 10].) Corporate counsel should of course, refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation, so that he or she can advise the corporation without bias or prejudice. (See *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 622 [120 Cal.Rptr. 253].) Even where counsel for a closely held corporation treats the interests of the majority shareholders and the corporation interchangeably, it is the attorney-client relationship with the corporation that is paramount for purposes of upholding the attorney-client privilege against a minority shareholder's challenge. (*Hoiles* v. *Superior Court* (1984) 157 Cal.App.3d 1192, 1198 [204 Cal.Rptr. 111].) "These cases make clear that corporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders." (*Skarbrevik* v. *Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 704 [282 Cal.Rptr. 627].)

In *Goldstein* v. *Lees, supra,* 46 Cal.App.3d 614, it was held that an attorney who formerly represented a corporation could not later represent a minority shareholder and director in a proxy fight over control of the corporation. "As the Committee on Professional Ethics and Grievances of the American Bar Association stated in Opinion 86: 'In acting as the corporation's legal adviser he must refrain from taking part in any controversies or factional differences which may exist among shareholders as to its control. When his opinion is sought by those entitled to it, or when it becomes his duty to voice it, he must be in a position to give it without bias or prejudice and to have it recognized as being so given. Unless he is in that position his usefulness to his client is impaired.' *This duty to act without bias or prejudice does not dissolve merely because the attorney has been discharged.*" (*Id.* at p. 622, italics added.)

A situation analogous to the one presented here was addressed in *Woods* v. *Superior Court* (1983) 149 Cal.App.3d 931 [197 Cal.Rptr. 185]. An attorney

who had represented a family corporation for almost 10 years was asked by the husband to represent him in divorce proceedings. In directing the trial court to grant the wife's motion to disqualify the attorney, the Court of Appeal stated: "We believe [the attorney] necessarily represents *both* husband's and wife's interests in his role as attorney for the family corporation. A corporation's legal adviser must refrain from taking part in controversies among shareholders as to its control, and when his opinion is sought he must give it without bias or prejudice. [Citing *Goldstein, supra,*] [¶] We believe the fact that [the attorney] continues to represent wife's interest in a family business which will be the focus of the marital dissolution is sufficient to disqualify [the attorney] from representing husband. *Under such circumstances [the attorney] should be disqualified even in the absence of a showing that he has in fact obtained confidential information.*" (149 Cal.App.3d at p. 936, italics added.)

Also analogous is the situation presented in *Civil Service Com.* v. *Superior Court* (1984) 163 Cal.App.3d 70, 81 [209 Cal.Rptr. 159]. The appellate court faced the question of whether the county counsel's office should be disqualified from representing the county in a lawsuit against a quasi-independent public agency when the county counsel's office had previously given advice to that agency regarding the subject matter of the lawsuit. The court observed: "It strikes us that this situation is not dissimilar from the case where an attorney undertakes to advise two clients on a single matter or transaction. The attorney may be either an intermediary, actively attempting to accommodate the clients' competing interest, or merely an advisor, explaining to the clients their legal options. In either case, *if the matter later results in litigation, the attorney is precluded from representing either client.* (See *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 900 [142 Cal.Rptr. 509]; *Industrial Indem. Co.* v. *Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 537 [140 Cal.Rptr. 806]; *Brennan's Inc.* v. *Brennan's Restaurants, Inc.* (5th Cir. 1979) 590 F.2d 168, 171-172; *E.F. Hutton & Co.* v. *Brown* [(S.D. Tex. 1969)] 305 F. Supp. [371] at pp. 394-395; see also A.B.A. Model Rules of Prof. Conduct (1983) rule 2.3(c).)" (*Id.* at p. 81, italics added.)

Respondents argue that Rules of Professional Conduct, rule 3-310 does not prohibit representation in a matter in which the former client is not a party. It is true that here Christensen White is not representing any party in the MGM action, but represents respondents only in the CLBN action. There is also no evidence that Christensen White ever previously represented CLBN. However, under the circumstances of this case, we believe this is a distinction without a difference. The proscription exists where counsel's employment is "adverse to the client or former client," and can exist even though a prior client is not a party to the litigation. As noted in *Woods,*

*supra*, the corporation was not actually a party to the litigation. However, the court recognized that the litigation would focus on the family corporation, a client of husband's attorney. "The appearance of impropriety . . . compels a strong rule prohibiting such an attorney from representing either side. This, we believe, is consistent with the underlying purposes of the rules against representing conflicting interests." (*Woods* v. *Superior Court, supra*, 149 Cal.App.3d at p. 936.)[10]

In this situation we have an even more compelling fact situation. While there are two separate actions, the court ordered the two matters consolidated "for purposes of trial."[11] Our own review of the pleadings indicates that while the two actions may be based on separate transactions; i.e., the merger of MGM and Pathe and the financing of CLBN, and involve separate legal theories; i.e., the duty to disclose to shareholders and the duty to make accurate representations to a lending institution to induce it to enter into a financing agreement, both are based on the same factual allegations. Those are as follows: (1) that the respondents engaged in a scheme to deceive CLBN and MGM's independent directors to facilitate the sale of stock to Pathe despite respondents' knowledge that the new company would have insufficient cash flow after the merger to finance its operations; (2) that respondents induced Houlihan Lokey to issue an opinion that the new company would be solvent after the merger, while all respondents knew that the cash flow projections on which the opinion was based were inflated, and that there would be an immediate cash flow shortfall in excess of $200

[10]Courts have recognized in several different factual settings that disqualification on the basis of a prior relationship with a nonparty is proper. (*Hull* v. *Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 569; *Comden* v. *Superior Court, supra*, 20 Cal.3d 906; *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042, 1049 [197 Cal.Rptr. 232]; *see also Thomas* v. *Municipal Court of Antelope Valley J.D.* (9th Cir. 1989) 878 F.2d 285; *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6, 10 [136 Cal.Rptr. 373] and *Leversen* v. *Superior Court* (1983) 34 Cal.3d 530, 538-540 [194 Cal.Rptr. 448, 668 P.2d 755]; compare with *Maruman* v. *Integrated Circuits, Inc.* v. *Consortium Co.* (1985) 166 Cal.App.3d 443 [212 Cal.Rptr. 497].)

[11]There is considerable confusion as to what the term "consolidation" entails. (*Committee for Responsible Planning* v. *City of Indian Wells* (1990) 225 Cal.App.3d 191, 197 [275 Cal.Rptr. 57].) Some courts have used this term to mean a joint trial of related issues for the sake of convenience, but where pleadings, verdicts, findings and judgments are kept separate. (*Sanchez* v. *Superior Court* (1988) 203 Cal.App.3d 1391, 1396 [250 Cal.Rptr. 787].) Some courts regard a consolidation for purposes of trial as resulting in one set of findings of facts, conclusions of law and judgment. (*Bank of California* v. *Connolly* (1973) 36 Cal.App.3d 350, 363 [111 Cal.Rptr. 468]; *Clinton* v. *Hogan* (1947) 80 Cal.App.2d 815, 821-822 [183 P.2d 50]; *N.C. Roberts Co.* v. *Topaz Transformer Products, Inc.* (1966) 239 Cal.App.2d 801, 805 [49 Cal.Rptr. 209].) During the hearing on the third motion to disqualify, there was discussion on an objection to the consolidation order. The court stated, "It's my understanding as we get this matter to trial is to accompany [*sic*] both of these cases removing various causes of action and trying to put them in a perspective that I can deal with and the jury can deal with. I don't think it is very productive if you think about these two cases apart; but by doing that I don't see how it changes the relation of the party or potential use of evidence. . . ."

million, which would render MGM incapable of funding its operations without massive additional financing; and (3) the long-term cash flow forecasts for MGM were based on hopelessly over-optimistic film receipt projections, which respondents concealed from both CLBN and MGM's independent directors.

Whatever effect the order of consolidation has on the pleadings, the order of proof, and other procedural matters, the practical effect of consolidation of these suits is that both MGM and CLBN are challenging the merger. Each plaintiff will be trying to prove that Kerkorian, Silbert, Barbakow and Tracinda acted in their individual interests and engineered a scheme to inflate the value of MGM so that they could make money from the sale of their shares in MGM. Every time Christensen White attempts to disprove this theory against their clients in the CLBN action, it will affect the MGM action. Also, of necessity, Christensen White must attempt to support the credibility of Silbert, a former director and shareholder of MGM, with respect to his participation during the negotiations for the merger. In effect, Christensen White will be representing a former shareholder and director against the interests of the former corporate client. While it is true that the Hufstedler firm represents the Tracinda clients in the MGM action, that firm and the Christensen firm are on the same side, seeking the same results. By consolidation, the trial court properly sought to achieve administrative efficiency; however, the effect of the presence and assistance of Christensen White in CLBN's case cannot be divorced from the MGM case.

Based on Christensen White's employment as chief corporate counsel for MGM generally, and its specific representation in the transaction giving rise to these suits, it is clear that its appearance in this action is "adverse to the client or former client" and Christensen White should have been, *per se*, disqualified from representing Kerkorian, Tracinda, Barbakow and Silbert in this dispute.

3. *Waiver—express and implied*

■ Respondents argue that MGM expressly and impliedly waived any objection to the representation by the Christensen firm.

First they point to a statement made on December 3, 1993, by a member of the Case firm during the second day of the deposition of Barbakow.[12] In response to a question, Christensen White attorney Patricia Glaser asked, "[c]an we assume, just to move it on, that in each instance when you ask for a conversation which arguably is asking for attorney-client privilege information, that by virtue of asking the question you're waiving the privilege on

---

[12]Discovery in both cases was coordinated by express agreement among the parties.

3behalf of MGM?" Mr. MacNaughton, the partner of the Case firm conducting the deposition, responded, "I'm waving the privilege, certainly, with respect to Mr. Silbert or Christensen White, or anyone of that nature, up through November 1, 1990." In this argument, respondents confuse the attorney-client privilege and the duty of confidentiality with the duty of loyalty. The fact of waiver of the attorney-client privilege does not affect the duty of loyalty.

Next, respondents argue that MGM impliedly waived the attorney-client privilege, during the MGM bankruptcy proceedings, when CLBN and MGM did not join in objection by creditors to Christensen White's joint representation of MGM and Mr. Kerkorian. "[A] client or former client may consent to an attorney's acceptance of adverse employment or such consent may be implied by conduct. [Citations.]" (*Health Maintenance Network* v. *Blue Cross of So. California* (1988) 202 Cal.App.3d 1043, 1064 [249 Cal.Rptr. 220]; *In re Lee G.*, *supra*, 1 Cal.App.4th at p. 27.) This occurred in May 1991, approximately one and one-half years before the MGM lawsuit or the CLBN lawsuit was filed. Since the bankruptcy proceeding was possibly the reason MGM began to suspect its own directors and shareholders of a misrepresentation and fraud, we cannot construe their failure to object at such an early stage to be a waiver of their rights to later seek disqualification.[13]

### 4. *Prejudice*

#### a. *The subsequent summary judgment motions*

In their brief, respondents argue that their motions for summary judgment were granted in both the CLBN and the MGM actions after the denial of the motion to disqualify, thus making this appeal moot. Appellants argue that if Christensen White is disqualified, the summary judgments must be reversed.[14]

Because any appeals of the summary judgment motions have not been briefed nor have those records been completed, we do not rule on the propriety of those motions at this time.

---

[13]Respondents also argue that CLBN's failure to bring a similar disqualification motion in their related federal court action somehow operates as a waiver of their right to disqualification here. It appears the federal lawsuit may have been dismissed; but in any event, we find this argument completely unpersuasive.

[14]At oral argument, respondents claimed that they had moved to consolidate the appeals of those summary judgments with this appeal, but that their motion had been denied. A review of our records reveals that no motion to consolidate was filed in the appeals of the summary judgment motions, but while the instant appeals were in the briefing stage, respondents moved to stay the proceedings to then consolidate them with the anticipated appeals from the not-yet-final summary judgments.

### b. *Delay*

Respondents argue, and we agree, that motions to disqualify are often used as a tactical device to delay litigation, and when there is evidence of unreasonable delay in bringing the motion, causing prejudice to the present client, the motion for disqualification should not be granted. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 599.) Here, it is obvious that much time and effort has already been spent by the Christensen firm in defending this action, obviously costing respondents thousands of dollars for attorney fees.

However, any prejudice resulting to Christensen White as a result of their disqualification at this point is not a result of CLBN's and MGM's delay. Motions to disqualify were brought promptly and renewed at every possible opportunity. Respondents have been aware at all times since the inception of these actions that CLBN and MGM have vigorously opposed the Christensen White representation. Therefore, we do not find any basis for denying the disqualification motion based on unreasonable delay.

### DISPOSITION

The first appeal (case No. B077817) is dismissed as moot. The judgment (order denying disqualification motion) in the second appeal (case No. B084939) is reversed. In the first appeal, the parties are to bear their own costs. Costs in conjunction with the second appeal only are awarded to appellants MGM and CLBN.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied August 11, 1995.