[No. A080116. First Dist., Div. Three. Apr. 29, 1999.]

ELOISE GILBERT, Plaintiff and Appellant, v.
NATIONAL CORPORATION FOR HOUSING PARTNERSHIPS et al.,
Defendants and Respondents.

**COUNSEL**

Law Offices of Robert Blumenthal and Robert H. Blumenthal for Plaintiff and Appellant.

Hancock Rothert & Bunshoft, David Lee Suddendorf; Krupin Greenbaum & O'Brien, Carolyn D. Chabrow and Jonathan W. Greenbaum for Defendants and Respondents.

**OPINION**

**McGUINESS, P. J.**—On the eve of trial, the trial court disqualified appellant Eloise Gilbert's attorney because of a conflict of interest created by his simultaneous representation of her and other clients in a different case. The trial court found that in attempting to advance appellant's interests by calling one or more of his other clients as witnesses in appellant's case, the attorney risked harming his other clients' interests in violation of the terms of a settlement agreement he had negotiated in the other case. Appellant now contends that by disqualifying her attorney, the trial court denied her due process and a fair hearing. We conclude the trial court was within its broad discretion and acted appropriately to maintain ethical standards of professional responsibility and to preserve public trust in the administration of justice and the integrity of the bar. We therefore affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 1994, Edwin "Teddy" Franklin and three other maintenance supervisors employed by respondent National Corporation for Housing Partnerships (NHP) retained the Law Offices of Robert H. Blumenthal

(appellant's attorney) to file a complaint against NHP alleging unequal pay, racial harassment and discrimination in the workplace. In response to demand letters from appellant's attorney, NHP proposed that the dispute be resolved through private mediation. The parties selected a mediator through the American Arbitration Association.

Prior to mediation, appellant's attorney requested certain personnel information from respondent NHP. In response, NHP provided confidential information on the NHP salary structure and the race of individual NHP employees. NHP provided this information on the express conditions that it was "for the *sole* purpose of the mediation," and that "[t]he California Evidence Code with respect to confidentiality will be adhered to."[1] (Italics in original.)

The parties proceeded to mediation, in which appellant's attorney successfully negotiated a settlement with NHP on behalf of Franklin and his coemployees. The mediator drafted a "Memorandum of Agreement" (MOA) setting forth the essential terms of the settlement. Among other things, the MOA provided that the complaining employees would receive payments for personal injuries and their salaries would be adjusted upward. The MOA

---

[1]As applicable at the time of the mediation, former Evidence Code section 1152.5 provided in pertinent part: "(a) When persons agree to conduct and participate in a mediation for the purpose of compromising, settling, or resolving a dispute in whole or in part:

"(1) Except as otherwise provided in this section, evidence of anything said or of any admission made in the course of the mediation is not admissible in evidence or subject to discovery, and disclosure of this evidence shall not be compelled, in any civil action or proceeding in which, pursuant to law, testimony can be compelled to be given.

"(2) Except as otherwise provided in this section, unless the document otherwise provides, no document prepared for the purpose of, or in the course of, or pursuant to, the mediation, or copy thereof, is admissible in evidence or subject to discovery, and disclosure of such a document shall not be compelled, in any civil action or proceeding in which, pursuant to law, testimony can be compelled to be given.

"(3) When persons agree to conduct or participate in mediation for the sole purpose of compromising, settling, or resolving a dispute, in whole or in part, all communications, negotiations, or settlement discussions by and between participants or mediators in the mediation shall remain confidential.

"(4) All or part of a communication or document which may be otherwise privileged or confidential may be disclosed if all parties who conduct or otherwise participate in a mediation so consent.

"(5) A written settlement agreement, or part thereof, is admissible to show fraud, duress, or illegality if relevant to an issue in dispute.

"(6) Evidence otherwise admissible or subject to discovery outside of mediation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation." (As amended by Stats. 1994, ch. 1269, § 8, p. 6583, repealed by Stats. 1997, ch. 772, § 5.) Former Evidence Code section 1152.5, subdivision (a), is continued without substantive change in Evidence Code section 1119, added by Statutes 1997, chapter 772, section 3.

included a statement that "[s]aid payments shall not constitute an admission of any wrongdoing by [NHP] but are solely made to avoid costly and time-consuming litigation," and provided that "[t]he terms of this MOA and of the final settlement agreement to be executed within 7 days are to be kept strictly confidential by all parties." Each of the four complaining NHP employees signed the MOA, as did appellant's attorney.

Pursuant to the MOA, the parties prepared four separate settlement agreements (the Settlement Agreement), one for each of the four complaining employees. Each Settlement Agreement contained substantively the same provisions, including a confidentiality clause (the Confidentiality Clause) stating: "The parties agree to keep the fact of this Settlement and this Agreement, and each of its terms, strictly confidential. This provision does not apply to discussions between the Employee and his counsel, the Law Offices of Robert Henry Blumenthal." Immediately following this Confidentiality Clause in the text of each Settlement Agreement was a penalty clause (the Penalty Clause) stating: "The Employee agrees that in the event of a breach by him of the confidentiality provision of the preceding paragraph, then the Employer [NHP] shall be entitled to recover from the Employee the amounts paid under . . . this Agreement, together with costs, expenses and attorney's fees associated with enforcement of the Agreement." All four of the employees represented by appellant's counsel signed individual Settlement Agreements containing this same Confidentiality Clause and Penalty Clause. In October 1994, appellant's attorney requested final executed copies of each Settlement Agreement, "along with four checks payable to Robert Blumenthal and the respective Claimant."

In April 1995, Attorney Blumenthal sent a letter to counsel for NHP stating that he represented appellant, "another employee of NHP . . . , who has a discrimination claim of underpayment *similar to the claims of Edwin Franklin and others*, which was settled last year. [¶] If you are authorized to act in this case, I would like to proceed with settlement negotiations." (Italics added.)

Appellant was terminated from her employment at NHP in June 1995. On July 21, 1995, she filed a complaint for damages against NHP, alleging wrongful termination, discrimination in promotion and pay based on race and age, and retaliation for filing administrative complaints under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA). On NHP's motion for summary judgment or summary adjudication, the trial court denied summary judgment but granted summary adjudication as to appellant's causes of action for discrimination based on unequal pay and failure to promote, breach of an implied contract of continued employment, and breach of the implied covenant of good faith and fair dealing. In

the context of opposing these motions, appellant offered a declaration by Franklin alleging that NHP failed to pay salaries according to company guidelines for reasons based on racial discrimination and retaliation.

At the outset of trial on March 7, 1997, NHP moved *in limine* to exclude Franklin's testimony on the ground any dispute he may have had with NHP had already been resolved pursuant to the confidential Settlement Agreement, and Franklin should not be permitted to testify about any matters made confidential by that Settlement Agreement.[2] In response to questions from the trial court, appellant's attorney stated he intended to call Franklin to testify about complaints he had heard from other NHP employees and his own observation of alleged racial discrimination and harassment in the workplace environment; NHP's failure to take action in response to complaints about this alleged discrimination and harassment; NHP's alleged retaliatory actions against employees who took legal action; and NHP's allegedly racially motivated failure to pay employees' salaries in accordance with NHP's own guidelines.[3] Because appellant wanted Franklin to testify even though Franklin might violate the Settlement Agreement's Confidentiality Clause if he did so, the trial court expressed serious concern that

---

[2]Among other things, counsel for NHP argued: "With respect to [appellant] not being party to that [Settlement Agreement], we're not saying she was a party to that settlement. We're saying evidence of that settlement—and in fact, Your Honor, our position is, in effect, that Mr. Blumenthal is a party to that settlement. He was their attorney, and he got the fruits of that settlement. He also was their agent, and we have a serious issue if anything comes up of that settlement, I mean the case law is that he could be disqualified from bringing—from representing [appellant] in this case because he has an undue advantage using that settlement, and if Your Honor wants us to provide case law on that, we'll be glad to do that."

[3]Appellant's counsel stated: "We have to make a distinction here I think between the use of the [Settlement Agreement] which I'm not proposing to offer into evidence, and I'm not sure if defense counsel is just arguing to exclude the fact of a settlement agreement because I'm not offering that and I don't know if that's his point or not . . . . [¶] [T]he jury . . . is entitled to look at the entire workplace and see what was going on and see how everybody was being treated, see how not just the [appellant] was being treated, but others in the same group were being treated, and the group—the group here, Judge, is the five persons that complained for a year and a half, the [appellant] and four [maintenance] supervisors. There were five of them, and they complained about the harassment in the workplace for a year and a half, and it is the [appellant's] position in this case she was retaliated against because of her continuing complaints about the harassment in the workplace and the failure to pay her compensation according to the company's own compensation guidelines, and that both the failure to pay the compensation and the failure to take the corrective action in the workplace were racially motivated, and those were the complaints—that's the way it was put by them, to the district manager and that is the reasonable basis or the reasonable cause to believe that there was discrimination in the workplace, and it was for these continuing complaints because they repeatedly—they repeatedly went to the district manager about it, that a general hostility towards them existed within the company and that hostility developed into some kind of a retaliatory attitude toward each one of these people. . . ."

appellant's counsel had a conflict of interest in continuing to represent both of them. The court therefore requested further briefing on this issue.[4]

In response, appellant submitted declarations by herself, Franklin, and her attorney. NHP submitted a formal motion to disqualify appellant's counsel, supported by declarations and extensive briefing. At a hearing on March 10, 1997, the trial court granted appellant's request for more time to submit opposition to NHP's motion. On March 11, 1997, appellant submitted three more declarations from herself, Franklin, and her attorney.

---

[4]In colloquy on the record of the March 7, 1997, hearing, the trial court stated: "[F]rankly what very much concerns the court is . . . the term 'confidentiality.'

"These people entered into agreement that there would be a confidential settlement on these issues which in so many words means that in the future, they would keep their mouth shut about this matter.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . The employees and the company agreed that they would settle the matter and that the matter would become confidential.

"Now, I am faced with a situation where the counsel who negotiated that confidential settlement is now because of his knowledge that settlement existed, offering the testimony of these people as to all of the activities that went into what ended up as a confidential settlement and presenting it to the court with the idea that they're all fine because we're subpoenaing them, so therefore, they have to testify under oath and therefore we don't have to worry about the fact they've all agreed to maintain confidentiality because they will answer in court.

"The court at this point, frankly, is concerned over the fact that I see a real conflict in interest here in counsel because I see a real problem, as to whether by any of these people raising their hands, they thus in so many words blow the settlement they've worked out which could involve the return of money with interest and substantial other penalties.

"What I'm saying is I don't see that counsel is appropriate to act as their counsel at this particular point because he is, in effect, asking them and I can only assume they have discussed this entire matter—well, I know they have because he was their attorney.

"We now have a situation where the attorney who negotiated the confidential settlement is able to use all of that material in a case where he and he alone—well, he and his four clients who are now to be witnesses are to be using the confidential matter of the case and presenting it to the court.

"[F]rankly, I'm concerned about the way this matter is being presented to the court, and I frankly am troubled by the fact that it appears that counsel is using what he negotiated plus the subpoena power of the court to get around what he, himself, negotiated.

"I see a conflict of interest. I see a real concern over whether these people can take the stand without appropriate legal advice other than from the attorney for this [appellant] who is encouraging them, of course, to testify, since it seems to me that the minute they raise their right hand and say more than their name, they are running the risk of violating everything that they agreed to do confidentially previously.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . I've gone over the agreement, counsel. I'm concerned frankly about not only the wording of it, but I'm frankly concerned about the public policy towards settlement. I'm concerned about the spirit of such an agreement, and again, the major concern I have is that the same counsel who negotiated the confidential settlement and confidential agreement and agreement for confidentiality is now the attorney who is—it would certainly seem not only raising but attempting to use the subpoena power of the court and the court's authority to compel testimony to get around this."

In her two declarations, appellant stated she had "worked closely" and "shared information" with her nephew Franklin and the other three complaining employees "on issues of racial harassment in the workplace and salary and promotion discrimination at NHP's Hunters Point properties"; she had not participated in the earlier mediation of the claims of Franklin and the others because she was in the hospital at the time; she learned about the Settlement Agreement from Franklin, NHP business records and other employees; she had "no interest adverse to my nephew, Teddy Franklin"; "[f]rom the beginning Mr. Blumenthal has been representing us in our mutual goals"; "[t]o my knowledge we will not offer any evidence in the case which was confidential when it was obtained"; and "to disqualify my attorney at this time will have a harmful effect on me and my case."

Franklin's declarations were substantially similar to appellant's. In his March 10, 1997, declaration, Franklin stated he had "worked closely" with appellant and "shared information" with her "about the harassment, salary discrimination and . . . conditions in our workplace" caused by alleged racial discrimination; in August 1994, along with three other employees, Franklin and appellant had retained Blumenthal to represent them in their dispute with NHP; Franklin had participated with the other maintenance supervisors in mediation with NHP; when he signed the Settlement Agreement in October 1994, he "understood that thereafter I was agreeing not to disclose the fact that the company and the four maintenance supervisors had entered into [an] agreement or the terms of the [Settlement Agreement]"; because appellant's "claims had not been resolved I did not agree to keep confidential my knowledge of the workplace harassment and the salary discrimination issues"; he "was never asked to keep these issues confidential"; he wanted to testify in appellant's case "on the issues of racial harassment in the workplace, discrimination in salaries and promotions, the failure of the company to take corrective action and the company's retaliatory conduct"; and "I do not believe any conflict exists between the [Settlement Agreement] I signed and my giving such testimony."

In his subsequent March 11, 1997, declaration, Franklin stated he and the other complaining NHP employees all discussed the Settlement Agreement with Blumenthal and the mediator, and agreed to NHP's request for a "confidentiality provision"; he personally "warned" his fellow NHP maintenance supervisors "not to say anything about the terms of the [Settlement Agreement]"; he has "no interest adverse" to appellant; and "[f]rom the very beginning Mr. Blumenthal has been representing both of us."

In his own first declaration of March 10, 1997, appellant's attorney discussed his participation in the mediation and his negotiation of the

Settlement Agreement on behalf of Franklin and the other three maintenance supervisors. Blumenthal's declaration stated that the only confidentiality agreement was to keep the *fact* of the Settlement Agreement and its terms confidential, not to keep confidential the "subject matter" of the Settlement Agreement or "the facts and circumstances of the harassment and the discrimination"; and "[appellant] does not intend to offer in evidence the [Settlement Agreement]s, or any of their terms, or the fact of settlement through the testimony of Teddy Franklin or anyone else. Mr. Franklin and the three other maintanence [*sic*] supervisors will testify merely as witnesses to their knowledge of the events and circumstances of discrimination and harassment in the workplace in connection with [appellant's] retaliation claim."

In his subsequent declaration of March 11, 1997, appellant's attorney stated that NHP did not supply him or his clients with any information during the mediation and negotiation of Settlement Agreement; he "will not be using in [appellant's] case any information that was confidential when it was obtained"; he had not incorporated into appellant's action any confidential information or evidence "that was wrongfully acquired"; appellant "does not intend to introduce any testimony adverse to the interest of the maintenance supervisors"; and appellant had learned of the settlement from Franklin before it was reduced to writing. Blumenthal also complained that he had not had an adequate opportunity to respond to the motion to disqualify.

At the continued hearing on March 11, 1997, appellant's attorney requested additional time to file points and authorities, which NHP opposed. The trial court did not grant this request. After reviewing appellant's additional declarations and written submissions, the trial court stated: "The concern I have with regard to the updated memos, frankly, is that they confirm the concerns of the court. Certainly the four individuals who entered into the confidential settlement, it is evident from the declaration wish to testify. [¶] The problem we run into there is that these individuals have settled for certain agreements, some of which involve money, some of which involve changes of assignments, the point being there comes a point where if the wrong thing is said by any of these individuals, it may be treated as a violation of that confidential order and confidential settlement such that money might have to be returned, jobs might be cancelled and various other things might occur. [¶] The point is, if these people take the stand, the situation is such that counsel is not in a position[—]since he represents the [appellant] who, of course, wants them to testify[—]is not in a position to also advise them of their rights and liabilities if they do, in fact, testify and do, in fact, say, for want of any other word, the wrong thing. [¶] Under all of the circumstances, counsel, the court does find that there is a conflict here.

Under these circumstances, the remedy is the granting of the motion to disqualify counsel." The trial court thereupon granted the motion to disqualify and removed the matter from the trial calendar in order to give appellant time and opportunity to obtain new counsel.[5]

Appellant appeals from the order of disqualification.

## II. STANDARD OF REVIEW

■ We review a disqualification order for abuse of discretion. (*Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 73 [67 Cal.Rptr.2d 857]; *Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327]; *Truck Ins. Exchange* v. *Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1055 [8 Cal.Rptr.2d 228].) ■ Where a trial court has discretionary power to decide an issue, we are not authorized to substitute our judgment for that of the trial judge; the trial court's exercise of discretion will not be disturbed in the absence of a clear showing of abuse. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58]; *Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 650-651, fn. 7 [190 Cal.Rptr. 355, 660 P.2d 813]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 356, pp. 404-405.) The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the trial court. Reversible abuse exists only if there is no reasonable basis for the court's action. (*Walker* v. *Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418]; *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Metro-Goldwyn-Mayer, Inc., supra,* 36 Cal.App.4th at p. 1838; *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1 (The Rutter Group 1995) ¶¶ 8:87-8:87.1.) The burden is on the complaining party to establish an abuse of discretion. The showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 331; *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138 [63 Cal.Rptr.2d 894].)

That is the situation in this case. We conclude appellant has failed to bear her burden of establishing the trial court abused its discretion in disqualifying her trial attorney. She makes four arguments: (1) in determining that a

---

[5]The trial court stated: "At this point, the motion will be granted. The matter will be removed from the trial calendar to give [appellant] the opportunity to get new counsel and get up to speed on the issues in the case, but as I say, for all of the reasons stated by the court, the motion will be granted."

conflict of interest existed, the trial court misinterpreted the Settlement Agreement's Confidentiality Clause; (2) disqualification was an improper remedy under the circumstances of this case; (3) appellant had insufficient time to respond to the disqualification motion; and (4) the trial court did not adequately balance the conflicting interests of the parties or express its reasoning on the record. We must reject each of these arguments.

### III. CONFLICT OF INTEREST

Appellant first contends that in concluding that Blumenthal's continued representation of both Franklin and appellant posed a conflict of interest, the trial court misinterpreted the scope of the Confidentiality Clause in the Settlement Agreement. Appellant points to the precise wording of the Confidentiality Clause, which requires only that "the *fact* of this Settlement and this Agreement, and each of its terms," be kept "strictly confidential." (Italics added.) According to appellant, the testimony of Franklin and the other NHP employees who signed the Settlement Agreement would not have violated this provision, because appellant's attorney promised that Franklin's testimony would be limited to their personal knowledge of facts and events *underlying* the settlement, rather than the fact of the Settlement Agreement itself or the nature of its terms.

Appellant's argument fails for several reasons. First, appellant has been overly generous in her interpretation of what appellant's attorney actually promised the trial court. In his March 11, 1997, declaration submitted in opposition to the motions *in limine* and to disqualify, Blumenthal promised under oath only that he "will not be using in [appellant's] case any information that was confidential *when it was obtained*," and that appellant "*does not intend* to introduce any testimony adverse to the interest of the maintenance supervisors." (Italics added.) Even though much of the testimony to which Franklin would presumably testify may not have been confidential "when it was obtained," it arguably *became* so as soon as Franklin signed the Settlement Agreement with its Confidentiality Clause. A promise not to use information that was confidential *before* the execution of the Settlement Agreement obviously begs the question whether the information in question subsequently became confidential as a result of the Confidentiality Clause. Such a promise is essentially meaningless.[6]

Similarly, the statement that appellant "does not intend" to introduce any testimony "adverse to the interest" of Blumenthal's other clients, Franklin

---

[6]Appellant's declaration of March 11, 1997, prepared for her by Blumenthal, made a similar statement: "To my knowledge we will not offer any evidence in the case which was confidential *when it was obtained*." (Italics added.) Thus, in both the declaration prepared for

and his NHP coemployees, promised nothing and offered scant solace to their interests. Written as it was in the context of Blumenthal's vigorous prosecution of appellant's litigation, this statement ignores the very real danger to Franklin and to Blumenthal's other clients posed by *any* testimony they might give in this case. Whatever the *intent* of appellant's attorney, the Confidentiality Clause clearly imposed significant limits on what, if anything, the four signatories could safely say about the facts underlying the Settlement Agreement. Any transgression of the Confidentiality Clause, intentional or not, would bring upon them the severe sanctions set out in the Penalty Clause of the Settlement Agreement. The trial court quite properly feared that appellant's attorney would be unable to prevent Franklin from crossing into prohibited territory while the attorney was simultaneously trying to elicit testimony helpful to appellant's case, much less while Franklin was being subjected to cross-examination by NHP's attorney. The trial court was correct in concluding that appellant's attorney underestimated the tremendous risks placed on Franklin and his other clients by their testimony here.[7]

Moreover, appellant seriously misjudges the scope of an attorney's duty to his client and thereby underestimates the conflict of interest between Blumenthal's representation of appellant in this case and his continued representation of Franklin and the other NHP employees. Because of his simultaneous representation of appellant and the other complaining NHP employees, appellant's attorney could not adequately counsel Franklin or the others about the severity of the detriment to them if their testimony happened to enter confidential territory. Indeed, it is evident from the record that appellant's attorney in fact had not adequately counseled Franklin, or else was unwilling or unable to prevent him from testifying about confidential

---

appellant by her attorney and in his own declaration, appellant's counsel was careful to avoid promising not to offer evidence or information which was *made* confidential by the terms of the Settlement Agreement *after* such evidence or information was originally obtained.

Moreover, contrary to Blumenthal's assertion in his March 11 declaration, the record is clear that NHP in fact did supply him with confidential information as part of the mediation process, with the understanding and on the condition this information would be used "for the *sole* purpose of the mediation" and therefore barred from disclosure or admission in evidence by Evidence Code section 1152.5. Blumenthal arguably had already violated this understanding earlier in the litigation by introducing evidence of this confidential information. For example, Franklin's declaration filed in opposition to the NHP motion for summary judgment, appellant's own response to NHP's interrogatories, and appellant's trial brief all contained explicit references to information obtained as part of the mediation process and which became the subject of express terms and conditions of the Settlement Agreement. The subsequent declarations of appellant, Franklin and Blumenthal himself, submitted in connection with the motions *in limine* and for disqualification, continued these kinds of disclosures.

[7]At oral argument, Attorney Blumenthal informed this court that in addition to Franklin, he intended to call at least one of his other NHP-employee clients to testify in appellant's case.

matters. Both of Franklin's declarations, prepared by appellant's attorney and submitted on appellant's behalf in opposition to the motions *in limine* and to disqualify, repeatedly mentioned both the *fact* of the Settlement Agreement *and* its terms. Even under appellant's narrow reading of the Settlement Agreement, these statements clearly transgressed the scope of the Confidentiality Clause. It was for good reason that Franklin's declarations "confirm[ed] the concerns of the court."

Even if appellant's attorney could successfully prevent Franklin or his other clients from testifying about matters made confidential by the Settlement Agreement, a conflict of interest would necessarily still exist. ■ One of the principal obligations of every attorney is to protect each of his or her clients in every possible way. It is a clear violation of that duty for the attorney to assume a position adverse or antagonistic to the client without the latter's free and intelligent consent, given with full knowledge of all the facts and circumstances. Thus, an attorney may not do anything which could divert the attorney's attention from the client's business or lessen the amount of energy the attorney can give to the client's interests. In this regard, the intention or motives of the attorney are irrelevant. " 'The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.' [Citation.]" (*Flatt* v. *Superior Court* (1994) 9 Cal.4th 275, 289 [36 Cal.Rptr.2d 537, 885 P.2d 950]; *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 [293 P. 788].) Thus, a conflict of interest exists whenever a lawyer's representation of one of two clients is rendered less effective because of his representation of the other. (*Flatt* v. *Superior Court, supra,* 9 Cal.4th at p. 289; *Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713 [152 Cal.Rptr. 776].)[8]

■ It is reasonable to conclude that any evidence NHP had recently settled employee claims similar to those made by appellant in this litigation was evidence that could have advanced appellant's case. Appellant knew about the Settlement Agreement and the underlying facts herself. As seen in

---

[8]"Where an attorney's conflict arises from successive representation of clients with potentially adverse interests, 'the chief fiduciary value jeopardized is that of client *confidentiality*.' [Citation.] . . . [¶] A different test is utilized where the attorney's conflict arises from simultaneous representations. 'The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality.' [Citations.] ' "[R]epresentation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." ' [Citation.]" (*Forrest* v. *Baeza, supra,* 58 Cal.App.4th at pp. 73-74, italics in original.)

her own declaration, appellant obtained this information independently of her attorney. Not being a party to the Settlement Agreement, she was not bound by its Confidentiality Clause. Thus, she could have presented this evidence herself without the assistance of Franklin or any of the others. To the extent her attorney curtailed his presentation of this favorable evidence in an attempt to reconcile the divergent interests of his multiple clients and the obligations of confidentiality arising from his own participation in the mediation and negotiation of the Settlement Agreement, he necessarily violated his duty of loyalty to appellant.[9]

As an advocate for appellant, counsel's duty was to utilize the available witnesses to attempt to support appellant's claims against NHP. As an advocate for Franklin and the other maintenance supervisors, on the other hand, counsel's duty was to assist in avoiding potential liability for breaching the Settlement Agreement he himself had negotiated on their behalf. Appellant wanted her attorney's other clients to testify in her own case, even though they risked violating the Settlement Agreement and compromising their own interests by doing so. Under the circumstances presented, this conflict of interest was irreconcilable. We conclude the trial court did not abuse its discretion in determining there was an inherent conflict of interest in Blumenthal's continuing, simultaneous representation of appellant and the other complaining NHP employees.

## IV. DISQUALIFICATION AS REMEDY

Appellant contends disqualification was the wrong remedy in this case, and that any potential conflict in interest "could have been more appropriately handled by requiring independent counsel for the witness before permitting the witness to testify." Under the circumstances presented here, we conclude the trial court's decision to disqualify appellant's counsel was not improper.

Although the law places great emphasis on the importance of a client's ability to retain the attorney of his or her choice, on occasion this interest must yield to the even more important public policy of maintaining the integrity of the judicial process. ▉ As recently reaffirmed by Division Two of this court: " 'The issue of disqualification "ultimately involves a conflict between the clients' right to counsel of their choice and the need to

---

[9]By virtue of Evidence Code section 1152.5, Blumenthal was in any case probably barred from introducing *any* of the information he gained in connection with the mediation and negotiation of the Settlement Agreement. Even without the question of his obligation to Franklin and the other maintenance supervisors, therefore, Blumenthal already had an inherent conflict of interest based on these statutory limitations on his ability to prosecute appellant's case.

maintain ethical standards of professional responsibility. The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process." ' [Citations.]" (*Forrest* v. *Baeza, supra,* 58 Cal.App.4th at p. 73.)

Rule 3-310 of the California Rules of Professional Conduct of the State Bar provides in pertinent part: "(C) A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." As this rule's official discussion notes, a lawyer must disclose "the potential adverse aspects of such multiple representation" and obtain his or her clients' informed written consent to the potential conflict. If the potential conflict becomes actual, the attorney must then obtain the clients' further informed written consent. (23 West's Cal. Codes Ann. Rules, pt. 3 (1996 ed.) p. 372.)

There is no evidence in the record of this case that either appellant, Franklin, or any of the other complaining NHP employees ever gave informed written consent to the actual conflict of interest posed by their attorney continuing to represent all of them in connection with this matter. In their declarations, appellant and Franklin simply state their *opinion or belief* that their attorney would continue to represent both of their interests. They do not attempt to reconcile this belief with the clear and definite conflict of interest posed by their attorney's continued simultaneous representation of them and his efforts to obtain Franklin's testimony about facts underlying the confidential Settlement Agreement which Franklin signed. In fact, the declarations indicate that neither appellant nor Franklin had any appreciation at all of "the potential adverse aspects of such multiple representation." (23 West's Cal. Codes Ann. Rules, pt. 3, *supra,* p. 372.) Clearly, as a threshold matter one must know of, understand and acknowledge the presence of a conflict of interest before one can give *informed* consent to its existence.[10]

██ In evaluating conflicts in dual representation cases, the courts have imposed a stringent test. "Even though the simultaneous representations may

---

[10]As noted (fn. 7, *ante*), at oral argument Blumenthal indicated that he originally intended to call as a trial witness at least one of his other NHP-employee clients aside from Franklin. As he candidly conceded in response to a question at oral argument, Blumenthal never obtained or submitted *any* declaration from this other client. In other words, there was *nothing* evidencing *any* form of informed written consent from this other proposed client-witness.

have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required.* Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one. [Citations.] [¶] The reason for such a rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship." (*Flatt v. Superior Court, supra,* 9 Cal.4th at pp. 284-285, italics in original.) "The strict proscription against dual representation of clients with adverse interests thus derives from a concern with protecting the integrity of the attorney-client relationship rather than from concerns with the risk of specific acts of disloyalty or diminution of the quality of the attorney's representation. [Citation.]" (*Forrest v. Baeza, supra,* 58 Cal.App.4th at p. 74.)

 By their failure to acknowledge even the potential existence of any conflict of interest, it is clear neither appellant nor Franklin has given the informed written consent necessary for Blumenthal's continued simultaneous representation of them both. The absence of this necessary consent arguably makes their continued representation by Blumenthal a violation of the Rules of Professional Conduct. Under these circumstances, appellant's right to retain the counsel of her choice must yield to the court's obligation to protect " 'the very integrity of our judicial process' " from a violation of the ethical standards of professional responsibility. (*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., supra,* 36 Cal.App.4th at p. 1838; see also *Forrest v. Baeza, supra,* 58 Cal.App.4th at p. 73.) Because the continuation of the attorney-client relationship in this situation was prima facie improper, the remedy of disqualification was appropriate. The trial court acted well within its broad discretion in ordering it. (*Flatt v. Superior Court, supra,* 9 Cal.4th at pp. 284-285; *Comden v. Superior Court* (1978) 20 Cal.3d 906, 914-916 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562]; *Forrest v. Baeza, supra,* 58 Cal.App.4th at p. 73; *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., supra,* 36 Cal.App.4th at p. 1838; *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 586.)

## V. DUE PROCESS AND FAIR HEARING

Due process requires hearing and a reasonable opportunity to be heard. Appellant contends she did not have enough time to respond to the disqualification motion. The contention is without merit.

The issue of disqualification was first raised at the Friday, March 7, 1997, pretrial hearing on NHP's motion *in limine* to bar the testimony of the maintenance supervisors, including Franklin, who had previously executed the Settlement Agreement with NHP. After the trial court expressed its serious concern with the evident conflict of interest posed by Blumenthal's continued representation of both appellant and the maintenance supervisors he sought to introduce as trial witnesses, it requested further oral and written argument on the issue to be presented on Monday, March 10, 1997. The trial court expressly stated its intention to give appellant's counsel "full opportunity" to make his case.[11]

At the continued hearing on March 10, appellant requested more time in order to submit additional declarations in response to NHP's motion to disqualify. The court asked whether appellant sought until the following morning, which appellant confirmed. Although NHP's counsel objected, the court ruled that appellant would have another day to respond to the motion, at which point it would consider any further arguments and rule. Appellant did not object or request any additional time. At the hearing the next day, however, appellant asked for more time to submit a memorandum of points and authorities. The trial court stated it had already gone over all of appellant's additional written submissions, and was prepared to rule. It then granted the motion to disqualify.

The record shows the trial court postponed the hearing on the disqualification motion at appellant's request. Appellant's attorney knew the court wanted written arguments and would rule on the motion at the continued hearing. He had a full weekend to prepare what the court wanted. Had appellant's counsel anticipated needing additional time in which to respond to the conflict of interest issue, he could have asked for it either on March 7, or even at the continued hearing on March 10. Instead, he expressly agreed to the single additional day suggested by the court. The grant of additional time was a privilege, not a right. Even without NHP's motion to disqualify, the court would have been entitled to disqualify appellant's attorney under its inherent power to control the conduct of those involved in judicial proceedings before it. (Code Civ. Proc., § 128, subd. (a)(5); *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 585.) There was no denial of due process.

---

[11]When appellant's attorney asked to speak "for a couple of minutes" at the end of the hearing on March 7, the trial court responded: "I suggest you wait until Monday, counsel, because I certainly will give you full opportunity. At this point, as I say, I want to see something in writing because I'm not sure how I am going to rule on this, except that I know that [appellant] needs to give me some more material to justify [her] position." To this, appellant's attorney replied: "All right."

## VI. ADEQUACY OF RECORD

Appellant argues the trial court was required to weigh competing interests and state its conclusions on the record before disqualifying appellant's attorney. Appellant's contention misses the mark.

In the case of *Smith, Smith & Kring* v. *Superior Court* (1997) 60 Cal.App.4th 573 [70 Cal.Rptr.2d 507] (*Smith*), on which appellant relies, the client gave informed written consent to its attorney's conflict of interest and dual representation, and expressly " 'waived any potential detriment' " to its case caused by this conflict. (*Id.* at pp. 576-577.) The Court of Appeal held that under such circumstances, the importance of protecting the client's ability to retain his or her counsel of choice required that there be an evidentiary showing of some actual detriment to the opponent or of injury to the integrity of the judicial process before the trial court could disqualify the attorney. Because no such showing was made, the court ruled the trial court had abused its discretion by recusing the attorney. (*Id.* at p. 577-582.)

The *Smith* case is clearly distinguishable from the instant one. As seen, the record here shows neither appellant nor Franklin gave informed written consent agreeing to accept less effective representation from their attorney. Appellant has not met the threshold precondition for requiring the trial court to balance her right to retain the attorney of her choice against the resulting harm to the integrity of the judicial process prior to exercising its broad discretion to disqualify the attorney for an actual conflict of interest. (*Smith, supra,* 60 Cal.App.4th at pp. 577-579.)

Moreover, even if the trial court were required to make the kind of weighing process described in *Smith*, there was no error or abuse of discretion in this case. The trial court clearly stated its reasons for disqualifying appellant's attorney at length on the record, and in so doing appropriately balanced the rights and interests of the parties involved in this matter.

Thus, the trial court expressly considered and weighed the facts that: (a) the Settlement Agreement included a Confidentiality Clause under which the parties thereto agreed "to keep the fact of this Settlement and this Agreement, and each of its terms, strictly confidential"; (b) this Confidentiality Clause could be interpreted to require all parties to the Settlement Agreement to "keep their mouth shut" about the matters at issue in the Settlement Agreement, at the risk of losing the significant benefits of the Settlement Agreement; (c) appellant's attorney himself negotiated the Settlement Agreement on behalf of Franklin, who was a party to the Settlement Agreement and whom he continued to represent; (d) the attorney was now seeking

to offer the testimony of Franklin and his other clients who were also parties to the Settlement Agreement about the underlying facts of the dispute addressed by the Settlement Agreement; (e) there was an inherent conflict in interest between the attorney's duty to present the strongest case on appellant's behalf, on the one hand, and his duty to Franklin and his other clients not to "blow the settlement they've worked out which could involve the return of money with interest and substantial other penalties"; (f) because of his position as one of the participants in the mediation and negotiation of the Settlement Agreement, appellant's attorney was in a position to use confidential information against respondent NHP; (g) appellant's attorney was seeking to use the subpoena power of the court to compel testimony that would otherwise remain confidential pursuant to the agreement he himself negotiated; (h) in view of his representation of appellant and his interest in obtaining their testimony in this case, appellant's attorney was not in a position to advise Franklin or the other parties to the Settlement Agreement of their rights and liabilities; and (i) permitting testimony on the facts underlying the confidential Settlement Agreement would discourage such agreements, thus violating the public policy favoring settlement.

We conclude the trial court adequately balanced the competing interests of the parties and the judicial process, and sufficiently stated its reasons on the record before disqualifying appellant's attorney.

## VII. DISPOSITION

We affirm the order disqualifying appellant's attorney. Each party will bear its own costs.

Parrilli, J., and Walker, J., concurred.

A petition for a rehearing was denied May 24, 1999, and appellant's petition for review by the Supreme court was denied July 28, 1999.