Filed 3/13/13  Wong v. Wong CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HENRY WONG et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>NAM SAN WONG et al.,<br><br>    Defendants and Respondents. | B237832<br><br>(Los Angeles County<br>Super. Ct. No. BC451915) |

        APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

        Law Office of Albert C. Lum and Albert C. Lum; Law Office of Cindy N. Tran and Lisa Ann Stilson for Plaintiffs and Appellants.

        Barry E. Cohen for Defendants and Respondents.

In this appeal from an order granting a motion to disqualify plaintiffs' counsel, we find no abuse of discretion and affirm.

## BACKGROUND

This litigation concerns the election of officers and directors of two related corporations, the Wong Family Investment Fund, Inc. (fund) and the Wong Family Benevolent Association, Inc., of Los Angeles (association). The association is a nonprofit mutual benefit association that owns the real properties that are managed by its wholly owned subsidiary, the fund. The association has several hundred members or shareholders who are the male descendants of the Wong family.

Each year, the association's governing council selects the members who will run for office. At the association's annual meeting in December, the members elect the association's officers and the fund's directors for the following year.

In 2010, the association's members were "factionalized" and embroiled in several lawsuits over control of the association. The disagreement arose in May 2010 when, according to one faction, the association's president Nam San Wong violated the bylaws by disbanding the association's governing council and installing a new council (the revised 2010 council) without the approval or vote of the shareholders. When the revised 2010 council selected the candidates for the annual election of officers and directors, a group of shareholders objected that the revised council was not authorized to perform that function and sought to conduct a separate election.

On November 20, 2010, the fund's 2010 board of directors retained Attorney Albert C. Lum as the fund's corporate counsel.

On November 23, 2010, Judge Stern issued an order to show cause (OSC) re contempt in one of the shareholder lawsuits. Judge Stern ordered nine shareholders[1] to

---

[1]  The nine shareholders named in the OSC re contempt are Paul Wong, Wai Chung Wong, Jon G. Wong, James K.B. Wong, James S.F. Wong, Michael Sun Chou Wong, Greg Fu Wong, James N.K. [Kuey] Wong, and Wah Song Wong.

appear at a December 12, 2010 contempt hearing regarding their alleged violation of the court's judgment of August 9, 2010. The OSC prohibited the nine shareholders and "all those acting in concert" with them from holding any membership meetings or conducting any elections on November 25 to 28, 2010, or otherwise interfering with the official functions of the association president Nam San Wong.

On December 27, 2010, Lum, while serving as the fund's corporate counsel, filed on behalf of five minority shareholders (plaintiffs)[2] the present complaint for breach of fiduciary duty against association president Nam San Wong and four members of the revised 2010 council (defendants).[3] The complaint alleged that in May 2010, Nam San Wong had violated the bylaws by disbanding the previous council and installing the revised 2010 council without the approval or vote of the shareholders. The complaint questioned the authority of the revised 2010 council to select the candidates for the December 2010 election. The complaint challenged the revised 2010 council's rejection of two eligible candidates for association president (plaintiffs Cheuk Choi Wong and Greg Fu Wong) and nomination of two ineligible candidates for the fund's board of directors (defendants Nelson Jung and Tony Hum, who allegedly are not descendants of the Wong family). The complaint requested preliminary and permanent injunctive relief to: (1) dismiss the revised 2010 council; (2) reinstate the previous council; (3) enjoin the association's December 26, 2010 meeting to ratify the candidates for the December 29, 2010 election; and (4) enjoin any actions that would affect the status quo.

The association went forward with the December 29, 2010 shareholders' meeting at which the 2011 association officers and fund directors were elected.

After the election, plaintiffs applied for a temporary restraining order. After "six incomplete or unsuccessful attempts [by plaintiffs] to obtain an ex parte [temporary restraining order (TRO),] litigation counsel for the respective parties agreed on January 3,

---

[2]    The plaintiffs and appellants in this action are Henry Wong, Wai Chung Wong, James K.B. Wong, Cheuk Choi Wong, and Greg Fu Wong.

[3]    The individual defendants and respondents in this action are Nam San Wong, Steven Ginsoon Wong, John W. Wong, Nelson Jung, and Tony Hum.

3

2011 that a final ex parte hearing would be held before the Honorable Judge O'Brien on January 12, 2011 so that the plaintiffs would have a final opportunity to seek a TRO to challenge the elections and annual meeting which occurred on December 29, 2010."

On January 12, 2011, Judge O'Brien denied plaintiffs' final request for a TRO, stating the evidence was insufficient to show plaintiffs were likely to prevail at trial. After the TRO was denied, the newly elected officers and directors took office.

On January 15, 2011, the fund's newly elected board of directors terminated Lum as corporate counsel. However, Lum continued to represent the five individual plaintiffs in this action against the association's president Nam San Wong and the four members of the revised council.

On February 4, 2011, the fund entered this litigation as a cross-complainant on the side of president Nam San Wong and the individual defendants. The fund and the individual defendants filed a joint cross-complaint under Corporations Code section 709 for "Determination of Validity of Election of Directors and for Injunctive Relief and Damages."

On March 2, 2011, the fund and the individual defendants moved to disqualify Lum as plaintiffs' counsel. As discussed below, the trial court denied the first disqualification motion without prejudice before granting the second motion.

## I.      The Court Denied the First Disqualification Motion Without Prejudice

### A.      *The Moving Parties' Arguments*

The moving parties argued that Lum should be disqualified from representing the minority shareholders in an election contest against his former client, the fund. They stated below in relevant part: "In Goldstein v. Lees [(1975) 46 Cal.App.3d 614,] the Second District Court of Appeal held that in acting as the corporation's legal advisor, an attorney must refrain from taking part in any controversies or factional differences which may exist among shareholders as to its control. Like Mr. Lum, Goldstein sought legal fees for representation of a minority shareholder in a proxy fight for control over Goldstein's former corporate client. The Court of Appeal said that his contract was

4

invalid due to his conflicts of interest and held that Goldstein was not entitled to be awarded attorneys fees.  The Court held that although a proxy fight might superficially appear to be in the best interests of the corporation, the conduct was adverse to the former corporate client for which Goldstein had been corporate general counsel, and thus privy to the confidences and secrets of that organizational client . . . ."

The moving parties argued that "[i]f an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule in all but a few instances.  State Farm v. Federal Ins. Co. (1999) 72 Cal.App.4th 1422, 1433-1434.  Mr. Lum had and has an actual conflict of interests, which time cannot abrogate."

Citing rules 3-600 and 3-310 of the California Rules of Professional Conduct,[4] the moving parties argued that Lum had failed to obtain the necessary waivers of the  clients' conflicting interests:  "Mr. Lum has an extreme conflict of interests in representing the individual plaintiffs and cross defendants in their election challenge lawsuit as to who[] was elected to the 2011 Board of Directors of the Wong Family Investment Fund, Inc. because until recently he also represented the Wong Family Investment Fund, Inc. as his corporate organization client."  "Mr. Albert C. Lum has never sought nor obtained any waiver of any conflicts of interests of the plaintiffs as parties most adverse to the [fund]. Pursuant to Corporations Code 709, the [fund] is the real party in interest in any such election challenge dispute, and as such is an indispensable party which should have been named and served as a defendant.  It appears that Mr. Albert C. Lum was aware of this law when he prepared the Complaint but must have known that if he followed the law, then he would be naming his own corporate client as a defendant in his clients' case in chief.  In fact, the Investment Fund has filed a cross complaint seeking declaratory relief in the instant case against the plaintiffs."

The moving parties also objected that Lum had "used the $25,000 he received from his corporate client to represent individuals as against that same corporate client, in violation of the California Rules of Professional Conduct, Rules 3-310 and 3-600,

---

[4]     All further rule references are to the California Rules of Professional Conduct.

without disclosing his representation of adverse individuals who brought the instant lawsuit to challenge who was elected to the new Investment Fund Board of Directors."

Defendant John W. Wong, a shareholder who served on the association's council in 2010 and the fund's board of directors in 2010 and 2011, filed a supporting declaration that stated in relevant part as follows: Plaintiffs filed this action in violation of "the injunctive language of Judge Stern's November 23, 2010 order." "[I]n a case called Wong Association v. Nam San Wong, et al. BC 434614[,] Mr. Albert C. Lum represented cross defendant Paul Wong and other individuals who were subject to a motion for contempt and who are, pending that motion, enjoined from interfering with the December 2010 elections. . . . Subsequent to the order, on Thanksgiving Day, Mr. Albert C. Lum went to the Wong Building to support his contemnor clients in their attempt to conduct their own election. Mr. Lum's attempt was halted by the Los Angeles Police Department who, after reading Judge Stern's order, cancelled that unlawful attempt. Mr. Albert C. Lum left the Wong Building with his contemnor clients. On December 8, 2010, Mr. Lum filed an ex parte application seeking clarification of Judge Stern's November 23, 2010 order which the court denied." The present action "is just another forum shopping lawsuit to disrupt the orderly business and conduct of the Wong Investment Fund and Wong Association. [¶] . . . **Thus, starting on December 27, 2010 with the commencement of this lawsuit, Mr. Albert C. Lum was simultaneously representing the investment Fund as his corporate client, and meanwhile also representing the five named plaintiffs who were and are challenging the election of the 2011 Investment Fund board of directors.**"

### B. *Plaintiffs' Opposition*

In opposition, plaintiffs argued there were no conflicting interests because "[t]he interest of the plaintiffs, the Investment Fund as well as the Wong Association are aligned in so far as challenging the illegal and improper actions of the former officers of the Wong Association in their nomination and acceptance of candidates for officers of the

Association and directors of the Investment Fund." Plaintiffs contended that "the complaining shareholders and the corporation . . . have the same interest."

They further argued that while there was a substantial relationship between Lum's former representation of the fund and his current representation of plaintiffs, there was no issue of confidentiality: "In Forest v. Baeza, 58 Cal.App.4th 65 (1997), the court stated 'Where an attorney's conflict arises from successive representation of clients with potentially adverse interest[s], 'the chief fiduciary value jeopardized is that of client confidentiality.' Flatt v. Superior Court 9 Cal.4th 275, 283 (1994). The initial question in such cases is whether there is a substantial relationship between the subjects of the former and current representations. 'If a substantial relationship exists, courts will presume that confidences were disclosed during the former representation which may have value in the current relationship.' Here there is no substantial relationship between Mr. Lum's representation of the Investment Fund and his current representation of the plaintiffs that would raise an issue of confidentiality. Mr. Lum's representation of the Investment Fund was less than two months. He was not retained until November 20, 2010 and was terminated on January 15, 2011 when the new board took over the operations of the Investment Fund. During the short two month representation of the Investment Fund, Mr. Lum acted on behalf of the Investment Fund and its shareholders to voice their concerns of the illegal nomination of candidates for office and directors for the Investment Fund for the then upcoming illegal election. *While there is a substantial relationship between Mr. Lum's representation of the Investment Fund and the plaintiffs of this case*, *there is no issue of confidentiality as the issues alleged in the complaint were the same issues and activity that occurred during November and December of 2010 that led to the filing of this complaint. Furthermore*, *many of the plaintiffs were also directors of the Investment Fund who voted to retain Mr. Lum. Any confidential information received by Mr. Lum as counsel for the Investment Fund would have been received from the individual plaintiffs in this case*, *thus no issue of confidentiality exist[s] that would disqualify Mr. Lum from his current representation of the plaintiffs*." (Italics added.)

In conclusion, plaintiffs argued that their interests were aligned with those of the fund, which they should have named as a plaintiff in their complaint: "Defendant's motion to disqualify is nothing more than a tactical ploy to disrupt the proceeding of this matter. Rather than focusing on the merits of the matter, defendants choose to attack the qualification of plaintiffs' counsel based on his short representation of the Investment Fund to address essentially the same issues raised in this matter. More importantly, defendants ignore the fact that defendants' counsel who is also the corporate counsel and litigation counsel for the Wong Association as well as the current counsel for the Investment Fund faces the same qualification issues in representing defendants' adverse interest to that of the Association and Investment Fund.

"Plaintiffs named the individual officers in the complaint and choose to leave out the corporations in recognition that the corporations as nominal defendants stand on the same side as plaintiffs and not defendants. Plaintiffs in filing this lawsuit represent not only their individual interest, but also the interest of the shareholders as well as the Association and Investment Fund in challenging the defendants' actions which violate[] the by-laws of the Association and Investment Fund. Perhaps the only mistake here is that counsel for Plaintiffs did not name the Association and the Investment Fund as either plaintiffs or defendants. Plaintiffs intend to seek leave to amend its complaint to properly name the necessary parties to this action. However, the decision not to name the Investment Fund as a plaintiff cannot be grounds for disqualification where there is no conflict of interest between the named plaintiffs and the Investment Fund. Therefore, defendants' motion should be denied."

C.      *The Court Found This Was a Case of Successive Representation in Which the Evidence Was Insufficient to Show that Confidences Were Disclosed*

On April 19, 2011, the superior court (Judge Ruth Kwan) denied the motion for disqualification "without prejudice." After noting that "'"[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one,"'" the court held that "simultaneous representation is not an issue in this motion. In

8

fact, Defendants agree this is a case of successive representation." Based on its view that this was a successive representation case, the court found the evidence insufficient to show "that confidences were disclosed during the former representation." The court stated that it was denying the motion "without prejudice."

## II.    The Court Granted the Second Disqualification Motion

On May 31, 2011, the fund and the individual defendants filed their second motion to disqualify Lum as plaintiffs' counsel.

### A.    *The Moving Parties' Arguments in Favor of Disqualification*

In response to Judge Kwan's assertion that "Defendants agree this is a case of successive representation," the moving parties argued this was a case of simultaneous representation. They provided a new supporting declaration to that effect by John W. Wong.[5] They argued in their moving papers that "Mr. Lum not only simultaneously

---

[5]    The declaration of John W. Wong stated in relevant part:

"32.  Mr. Albert C. Lum has never sought nor obtained any waiver of any conflicts of interests [arising from his representation of] the plaintiffs as parties most adverse to the Wong Family . . . Fund, Inc.  The Wong Fund does not waive Mr. Albert C. Lum's dire conflicts of interests and would not do so even if requested.  His statement in his prior opposition that the prior Investment Fund Board of Directors waived any conflicts of interests is a false statement.  I explained above the actual purposes for retaining Mr. Lum, none of which allowed him to represent some of the 2010 Wong Fund directors as against the Wong Fund and some of its 11 new 2011 directors.

"33.  To the contrary, the Wong Fund has filed a cross complaint seeking declaratory relief in the instant case against the plaintiffs, naming them as cross defendants with regard to the same election challenge.

"34.  Pursuant to Corporations Code 709, the Wong Fund corporation is the real party in interest in any such election challenge dispute, and as such is an indispensable party which should have been named and served as a defendant.  It appears that Mr. Albert C. Lum was aware of this when he prepared the Complaint.  He must have known that if he followed the law, then he would be naming his own corporate client as a defendant in his individual clients' case in chief.  He admitted as much in his prior opposition when he wrote:  'Perhaps the only mistake here is that counsel for Plaintiffs [that is Mr. Lum] did not name the Association and the Investment Fund as either plaintiffs or defendants.  Plaintiffs intend to seek leave to amend its complaint to properly

9

represented the plaintiffs who are adverse to Wong Family Association Investment Fund, Inc., at the same time as he represented the Fund as his corporate client, but also that he utilized the $25,000 paid by the Fund to pay himself for that simultaneous adverse representation. Mr. Lum had simultaneous dual adverse representation overlapping from November 20, 2010 until January 15, 2011 when Mr. Lum was terminated as corporate counsel for the Investment Fund. Mr. Lum has continued to represent the plaintiffs and other unnamed Wong members on behalf of whom he continues to adversely challenge his former corporate client."

The moving parties asserted that by failing to obtain the fund's knowing and written waiver of the conflict created by his representation of plaintiffs in this action, Lum had violated rule 3-310, which provides:

"(C)   A member shall not, without the informed written consent of each client:

"(1)   Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

"(2)   Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

"(3)   Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

name the necessary parties to this action. However, the decision not to name the Investment Fund as a plaintiff cannot be grounds for disqualification where there is no conflict of interests between the named plaintiffs and the Investment Fund.'

"35. As a director on the Wong Fund Board of Directors for 2010 and 2011, I know that Mr. Lum was never ever authorized to challenge the annual meeting or elections for the 2011 Wong Fund new Board of Directors. He appears to have intentionally, not 'mistakenly' failed to name the Investment Fund as an indispensable party to his 2011 election challenge lawsuit as then it would be immediately apparent to this Court that he should be disqualified. On December 27, 2010 when Mr. Lum filed the instant lawsuit and attempted on . . . his six ex parte efforts to obtain a TRO, he was still the corporate counsel for the Investment Fund and its Board of Directors, none of whom authorized the instant lawsuit be brought against themselves!"

10

The moving parties argued that as the fund's corporate counsel, Lum was required to "refrain from taking part in any controversies or factional differences which may exist among shareholders as to its control." (Citing *Goldstein v. Lees*, *supra*, 46 Cal.App.3d 614.)

### B. Plaintiffs' Opposition

In opposition, plaintiffs argued that because Nam San Wong should not have dismissed the 2010 council and replaced it with the revised 2010 council, the nominations were improper and their complaint was not filed in violation of Judge Stern's OSC re contempt: "While there is an injunction by Judge Stern in Dept. 62 that prohibits certain individuals from interfering with the then president, Defendant Nam San Wong, from carrying out his duties as president of the Association, the injunction does not give defendant Nam San Wong the right to act outside of the by-laws of the Association. Not only did defendant Nam San Wong wrongfully dismiss council members but he also replaced those members with individuals who had not been duly elected to the council. Any subsequent actions by this 'council' are therefore at best suspect, and not in the interests of either the Association or the Investment Fund. The by-laws specifically require that new council members be nominated by the existing officers, accepted by the then existing council members, and finally voted in by the general members during the annual election. The council members selected by defendant Nam San Wong in May 2010 were not accepted by the existing council since the then existing council was more or less disbanded by the dismissal of certain council members. Furthermore, the council as it existed in June 2010 was not duly voted upon by the general members at the annual meeting which was not scheduled to take place until the end of the year. At the election in December 2010, a new set of council members were nominated and placed on the ballot. Article II, Section 3 of the by-laws states in pertinent parts, 'at the annual meeting, Association Council members shall first be nominated by the president-elect and accepted by the [existing] Association Council, and then approved by majority vote of the members.['] The council that existed as of June 2010 conducted the nomination and

11

acceptance of candidates for the 2011 election on October 31, 2010. This council was never approved by majority vote of the members, thus any action by such council was, and is, illegal. An election held by an illegal council for candidates nominated by such illegal council cannot in itself be legal regardless of whether a quorum was present for the election. Furthermore, there are at least 10% of the shareholders who currently challenge the validity of the election, both as to whether a quorum was present and whether the candidates were properly nominated."

Plaintiffs further asserted that "[t]he interests of the plaintiffs, the Investment Fund, and the Association are aligned in so far as challenging the illegal and improper actions of the former officers of the Wong Association in their nomination and acceptance of candidates for officers of the Association and directors of the Investment Fund. Mr. Lum was retained both by the Investment Fund and the individuals not only to file this lawsuit but also to assess the risk of a judgment against the Association and/or Investment Fund in the case of *Nam San Wong & Steven Ginsoon Wong*, *et al.*, *v. Henry Wong*, *et al.*, LASC Case No. 403744 (the 'Nam San Wong' case). On January 26, 2011, Dept. 62 granted a judgment for defendants and award[ed] defendants costs, including attorneys fees, against the Association and the Investment Fund, who was substituted into the case by counsel, Lottie Cohen for the defendants, whom she represented individually. The amount allowed is in excess of $340,000. Furthermore, the Association recently had a meeting in which this 'council' requested that the Association members vote to approve appealing the judgment. That request was overwhelmingly defeated by a large majority of the members of the Association."[6]

---

[6]     In case No. BC403744, the association was substituted in place of the plaintiffs (Nam San Wong and Steven Ginsoon Wong), who sought to recover building repair payments to an unlicensed contractor, Sun Chou Michael Wong, and reimbursement checks made out to James S. F. Wong. After a court trial, judgment was entered against the association.

12

*C.      The Reply*

In reply, the moving parties argued Lum had violated the Rules of Professional Conduct by representing the minority shareholders in this litigation without the fund's informed written consent. They argued the retainer agreement did not authorize Lum to represent anyone other than the fund and did not authorize him to represent individual shareholders in this litigation against the fund.[7] Larry "Kim Toon" Wong, who signed the retainer agreement on behalf of the fund, stated in his declaration that the fund had hired Lum to provide advice to the board and did not authorize his use of the $25,000 paid by the fund to represent anyone other than the fund.

*D.      The Court Granted the Motion After Finding Sufficient Evidence to Infer*
        *That Confidences Were Disclosed During the Former Representation*

On October 12, 2011, Judge Deirdre Hill granted the disqualification motion. Like Judge Kwan, Judge Hill found this to be a case of successive representation: "Here, it is undisputed that Mr. Lum was retained by the Investment Fund on November 20, 2010 until January 15, 2011. Because Mr. Lum is not currently representing the Investment Fund as well as Plaintiffs, simultaneous representation of two adverse parties in this action is not at issue. Instead, the issue is one of successive representation."

Unlike Judge Kwan, Judge Hill found the evidence sufficient to create a presumption that Lum had obtained confidential information during his representation of the fund. Judge Hill concluded that because the fund knew that Lum "was going to file this lawsuit on behalf of some members and against other members," there was a "substantial relationship between his former representation and this current litigation such that there is a presumption that the attorney obtained confidential information from his former client. Although defendants repeatedly contend that no confidential information

---

[7]      The retainer agreement stated in relevant part that the legal services to be provided by Lum to the client "are as follows: research, representation in negotiations and writing letters, drafting of complaint, restraining orders, injunction and any other pleadings necessary. Taking of depositions, other discovery, and trial."

13

was obtained from the Investment Fund . . . , these arguments do not constitute sufficient evidence to overcome the presumption that confidential information was obtained from the former client, the Investment Fund. Further, there is no evidence that Mr. Lum obtained the written informed consent of the Investment Fund to waive this conflict of interest. [¶] Accordingly, the motion is granted."

## DISCUSSION

### I.     Standard of Review

Plaintiffs correctly contend that where, as here, the facts are undisputed, the appellate court conducts a de novo review of the trial court's conclusions of law.

"'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." [Citations.]' (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems*, *Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*).) 'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.]' (*Id.* at p. 1143.) As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact; 'the reviewing court should not substitute its judgment for . . . express or implied [factual] findings [that are] supported by substantial evidence. [Citations.]' (*Ibid.*) As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; *People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 742.) The trial court's 'application of the law to the facts is reversible only if arbitrary and capricious.' (*Haraguchi*, *supra*, at p. 712.)" (*In re Charlisse C*. (2008) 45 Cal.4th 145, 159.)

**II. A Corporate Counsel's Duty of Loyalty to the Corporation Is Paramount to the Individual Interests of the Shareholders**

To analyze the disqualification ruling in this case, we must first consider the duty of loyalty that Lum owed to his former client, the fund.

In *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832 (*Metro-Goldwyn-Mayer*), we stated that a corporate counsel's duty to the corporation takes precedence over the interests of the shareholders and that a corporate counsel must refrain from taking part in a dispute among shareholders over control of the corporation: "Case law provides the following guidelines: '[A]s attorneys for [a] corporation, counsel's first duty is to [the corporation].' (*Meehan v. Hopps* (1956) 144 Cal.App.2d 284, 293.) Corporate counsel should of course, refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation, so that he or she can advise the corporation without bias or prejudice. (See *Goldstein v. Lees*[, *supra*,] 46 Cal.App.3d [at p.] 622.) Even where counsel for a closely held corporation treats the interests of the majority shareholders and the corporation interchangeably, it is the attorney-client relationship with the corporation that is paramount for purposes of upholding the attorney-client privilege against a minority shareholder's challenge. (*Hoiles v. Superior Court* (1984) 157 Cal.App.3d 1192, 1198.) 'These cases make clear that corporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders.' (*Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 704.)" (*Metro-Goldwyn-Mayer, supra*, 36 Cal.App.4th at p. 1842.)

We also discussed the duty of loyalty that applies where an attorney seeks to represent clients who are adversaries: "Where the duty of loyalty applies, it requires a *per se*, or automatic disqualification, in all but a few instances. (*Flatt v. Superior Court, supra*, 9 Cal.4th at p. 284.) 'The reason for [the *per se*] rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to this

15

one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. All legal technicalities aside, few if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances. As one commentator on modern legal ethics has put it: "Something seems radically out of place if a lawyer sues one of the lawyer's own present clients in behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's *sense of loyalty* is askew." [Citation.] It is for that reason, and not out of concerns rooted in the obligation of client confidentiality, that courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated.' (*Flatt v. Superior Court*, *supra*, 9 Cal.4th at p. 285, fn. omitted.)" (*Metro-Goldwyn-Mayer*, *supra*, 36 Cal.App.4th at p. 1840, fn. omitted.)

## III.     Rules 3-600 and 3-310 Govern a Corporate Counsel's Representation of the Organization's Directors, Officers, Employees, Members, Shareholders, or Other Constituents

As the moving parties correctly pointed out below, a corporate counsel's representation of a corporation's directors, officers, employees, members, shareholders, or other constituents is governed by rules 3-600 and 3-310.

Rule 3-600(A) states that an organization's attorney "shall conform his or her representation to the concept that the client is the organization itself, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." Rule 3-600(E) allows the organization's attorney to "represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the

16

organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members."

Rule 3-310(C) requires the organization's informed written consent before the organization's attorney may: (1) represent more than one client in a matter in which the interests of the clients potentially conflict; or (2) accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or (3) represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

As the fund's corporate counsel, Lum's primary duty of loyalty was to the fund rather than the individual shareholders. (*Metro-Goldwyn-Mayer*, *supra*, 36 Cal.App.4th at p. 1842.) Although rule 3-600 allowed Lum to represent a group of shareholders such as plaintiffs, he was required to comply with any applicable consent requirements of rule 3-310.

Plaintiffs contend that rule 3-310's consent requirements are inapplicable where, as here, the interests of the former and current clients are not adverse. We conclude, as a matter of law, rule 3-310 applies to the undisputed facts of this case.

It is undisputed that Lum advised two clients, the fund and the minority shareholder plaintiffs, with regard to the same matter, the election of officers and directors for 2011. While serving as the fund's corporate counsel, Lum applied for a TRO on behalf of the minority shareholders to halt the installation of the corporation's (the fund's) directors and the parent corporation's (the association's) officers. After the TRO was denied, the newly installed directors terminated Lum as corporate counsel and filed a cross-complaint for the fund against the minority shareholders. Based on these undisputed facts, we conclude, as a matter of law, that the interests of Lum's former and current clients with regard to the election were either adverse or potentially adverse and, therefore, rule 3-310's consent requirements apply to this case.

Because Lum advised two adverse or potentially adverse clients—the fund and the individual plaintiffs—with regard to the same matter without obtaining the fund's

17

knowing and written consent as required under rule 3-310, he was properly disqualified from representing plaintiffs in this litigation. "'[W]here an attorney undertakes to advise two clients on a single matter or transaction [as] either an intermediary, actively attempting to accommodate the clients' competing interest, or merely an advisor, explaining to the clients their legal options . . . , *if the matter later results in litigation*, *the attorney is precluded from representing either client*. [Citations.]'" (*Metro-Goldwyn-Mayer*, *supra*, 36 Cal.App.4th at p. 1843, quoting *Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70, 81.)

The fact that the fund did not appear in this litigation until after Lum was terminated as corporate counsel does not cause us to conclude otherwise. The facts are undisputed that Lum simultaneously represented two clients with regard to the same matter whose interests were either adverse or, at minimum, potentially adverse. Under these circumstances, the fact the fund did not enter the litigation until the cross-complaint was filed is a "distinction without a difference. The proscription [under rule 3-310] exists where counsel's employment is 'adverse to the client or former client,' and can exist even though a prior client is not a party to the litigation." (*Metro-Goldwyn-Mayer*, *supra*, 36 Cal.App.4th at p. 1843.)

Our determination that Lum was subject to disqualification for failing to obtain the fund's knowing and written consent to his representation of the minority shareholder plaintiffs is consistent with the general rule that a "[c]orporate counsel should of course, refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation, so that he or she can advise the corporation without bias or prejudice. (See *Goldstein v. Lees*[, *supra*,] 46 Cal.App.3d [at p.] 622.)" (*Metro-Goldwyn-Mayer*, *supra*, 36 Cal.App.4th at p. 1842.) The undisputed facts of this case compel us to conclude that Lum violated his duty of loyalty to the fund when he agreed to represent the minority shareholder plaintiffs without obtaining the fund's informed written consent in accordance with rules 3-600 and 3-310. The consent of the minority shareholders was, of course, not binding on the fund because, under rule 3-600(E), the

18

"consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented."

**IV. Lum Was Properly Disqualified Regardless of the Disclosure of Confidential Information**

Plaintiffs contend the trial court erred in determining that Lum obtained confidential information while representing the fund. We conclude the issue of confidential information has no bearing on this appeal.

As previously discussed, Lum should have refrained from representing the minority shareholders or, at the very least, should have obtained the fund's informed written consent before representing plaintiffs. Because the undisputed facts show, as a matter of law, that Lum did not obtain the fund's informed written consent in compliance with rules 3-600 and 3-310, we conclude, as a matter of law, the disqualification motion was properly granted regardless of the disclosure or nondisclosure of confidential information. "Where the duty of loyalty applies, it requires a *per se*, or automatic disqualification, in all but a few instances. (*Flatt v. Superior Court*, *supra*, 9 Cal.4th at p. 284.)" (*Metro-Goldwyn-Mayer*, *supra*, 36 Cal.App.4th at p. 1840.) Plaintiffs have provided no reasoned authority or argument to avoid the application of the rule of automatic disqualification in this case.

19

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                   SUZUKAWA, J.

We concur:


EPSTEIN, P. J.


MANELLA, J.